VOIGT, Appellant, v. SOUTH SIDE LAUNDRY & DRY CLEANERS, INC., Respondent.

*April 27—June 2, 1964.*

For the appellant there was a brief by *Gerald H. Kops,* attorney, and *Norman W. Wegner* of counsel, both of Milwaukee, and oral argument by *Mr. Wegner.*

For the respondent there was a brief and oral argument by *Charles C. Erasmus* of Milwaukee.

CURRIE, C. J. Plaintiff contends that the outline of defendant's retirement income plan, which was distributed by defendant to plaintiff and other employees, constitutes an enforceable contract which entitles plaintiff to the benefit payments of $42.50 per month for which he instituted suit. Plaintiff also contends that the applicable provisions of such outline are unambiguous and are not subject to variance or explanation by parol testimony.

Noncontributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period. *Cantor v. Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405, 171 N. E. (2d) 518; *Ball v. Victor Adding Machine Co.* (5th Cir. 1956), 236 Fed. (2d) 170; *Siegel v. First Pennsylvania Banking & Trust Co.* (D. C. Pa. 1961), 201 Fed. Supp. 664; Anno. 42 A. L. R. (2d) 461, 467. The same principle is applicable to profit-sharing plans. *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769.

The outline of the retirement income plan distributed by defendant to its employees specified that full-time salaried employees who had at least a year of continuous employment with defendant on January 1, 1958, had not reached their normal retirement date, and were not covered under any other pension plan to which defendant contributes, were automatically covered under the plan as of January 1, 1958. Plaintiff met these eligibility requirements. Retirement benefits were specified to be $42.50 per month for an employee having completed twenty years of continuous employment with defendant on his normal retirement date, and a proportional fraction thereof for an employee who had then completed less than twenty years of employment with defendant.

The provisions of the outline under the heading "Normal Retirement Date" are as follows:

"Ordinarily, your Retirement Income will begin on your normal retirement date, that is, if you became covered under the Plan on January 1, 1958, on the first day of the month coinciding with or next following your 65th birthday or ten years of employment, whichever is the later date.

"If you become covered under the Plan after January 1, 1958, your normal retirement date will be on the first day of the month coinciding with or next following your 65th birthday."

If the above-quoted provisions stood alone unqualified by anything else, a reasonable interpretation would be that, inasmuch as plaintiff had more than ten years of continuous employment with defendant prior to reaching his sixty-fifth birthday, his normal retirement date was May 1, 1960. It would be an unreasonable interpretation of these quoted provisions to hold that the ten years of continuous employment requirement meant subsequent to January 1, 1958, so as to make plaintiff's normal retirement date January 1, 1968, thus reading in a qualification which does not appear in the text. Such an interpretation would be inconsistent

with the rule that pension trusts are to be liberally interpreted in favor of the employees. *Frietzsche v. First Western Bank & Trust Co.* (1959), 168 Cal. App. (2d) 705, 336 Pac. (2d) 589.

However, the concluding paragraph of the outline provides:

"Of course this is only a brief outline of the Retirement Income Plan. The Plan will be governed entirely by the terms of the Group Annuity Contract between the Company and the Prudential."

Thus, if the group annuity contract between defendant and Prudential contains a qualification that employees in plaintiff's situation must have completed ten years of employment subsequent to January 1, 1958, or have reached the age of sixty-five, whichever is the later date, in order to be entitled to any retirement income, such provision would govern over any conflicting provision contained in the outline. Unfortunately, the annuity contract was not offered in evidence at the trial.

Luetzow, president of defendant, testified that at the time he distributed copies of the outline of the plan to the employees, including plaintiff, he explained that all employees, including Luetzow, would have to complete ten years of employment after January 1, 1958, in order to be eligible for benefits upon retirement. Luetzow's son, treasurer of defendant, also testified that he gave the same explanation to the employees as did his father. The testimony of the Luetzows was given over the objection by plaintiff that such testimony varied the terms of a written contract. Two female employees testified they were present at the meeting of employees in the summer of 1958 at which the plan was explained by Luetzow. However, objections were sustained to questions which would have elicited what Luetzow then said. Defendant then made offers of proof that the testimony

of these two witnesses would have substantiated Luetzow's explanation of the plan. Plaintiff, on the other hand, had earlier in the trial testified that Luetzow had stated in his explanation given to the employees that anyone who had put in twenty years of employment with defendant would get $42.50 per month upon retiring at age sixty-five.

It is impossible for this court to determine whether the trial court's finding of fact with respect to the ten-year employment requirement is grounded on the outline of the plan or upon Luetzow's verbal explanation thereof. Inasmuch as plaintiff's cause of action is based on a written contract and not estoppel, we consider any verbal explanation of the plan made by defendant's officers to be immaterial. What is material and controlling are the provisions of the annuity contract between defendant and Prudential, and that was not before the court.

We deem this to be a proper case to exercise our discretionary power under sec. 251.09, Stats., on the ground that the real controversy has not been fully tried. Accordingly, we reverse and remand for the purpose of having the controlling annuity contract produced and admitted into evidence.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.