ZEMAITIS, for himself and on behalf of all others similarly situated, Respondent, v. BURLINGTON MILLS, INC., and others, Appellants. [Case No. 276.]

BEGUHL, and others, on behalf of themselves and all others similarly situated, Respondents, v. BURLINGTON MILLS, INC., and others, Appellants. [Case No. 277.]

*Nos. 276, 277. Argued November 1, 1972.—Decided November 28, 1972.*

(Also reported in 202 N. W. 2d 244.)

452

454

For the appellants there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland, S.C.,* attorneys, and *Victor M. Harding* and *Anthony W. Asmuth III* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding.*

For the respondent there was a brief by *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S.C.,* attorneys, and *John G. Vergeront* and *John P. Savage* of counsel, all of Milwaukee, and oral argument by *Mr. Savage.*

HANLEY, J. Three issues are raised on this appeal: (1) Was it error for the trial court to find that the plan terminated and the plaintiffs' right to share in the distribution of the trust, vested upon the company's last contribution to the trust on January 19, 1966?

(2) Was it error for the trial court to find that the plaintiffs had not established actual bad faith or self-dealing in connection with the plans to terminate?

(3) Was it error for the trial court to hold that as a result of the termination of the plan, the principal stockholder was not unjustly enriched to the detriment of the salaried employees?

*Termination of the plan on January 19, 1966.*

The trial court found that on January 19, 1966, the time when the company made its last contribution to the trust, each then participating employee's accrued benefit, based upon his prior service to that date, became fully vested in accordance with the terms of the plan as amended, and that these benefits could not, thereafter, be even innocently or inadvertently ignored and any action taken thereafter in disregard of their accrued and vested benefits would be ineffectual to divest the already assured benefits.

In making the above finding the court stated in its opinion "While the phrase 'discontinuance of contributions' might in certain contexts be subject to construction, it seems to the court that it may come about either by declaration or by conduct. It is abundantly clear that contributions could not be said to have continued after January 19, 1966." The trial court does not refer to any specific conduct on the part of the company to support the above finding. Clearly, the trial court erroneously concluded that a "discontinuance of contributions" takes place whenever the last payment is made. There was no evidence of any corporate intent that the plan terminate on that date.

The evidence in this case shows that the plan was at all times adequately funded and met the requirements of the Internal Revenue Service so that a "discontinuance of contributions" did not take place as of January 19, 1966. No additional contributions were necessary after January 19, 1966, to keep the plan fully funded. It is difficult to conceive how a "discontinuance of contributions" could take place when a pension plan is adequately funded to cover its employees' requirements, as actuarially computed.

We conclude that the trial court erred in holding that the plan terminated when the last corporate contribution was made on January 19, 1966.

*Improper self-dealing.*

The trial court found that the plaintiffs had failed to establish by clear and convincing evidence that bad faith or improper self-dealing was at the root of the decision to terminate the plan as of July 28, 1967. Although respondents do not contend that the relocation process itself evidenced bad faith or self-dealing, they do contend that the delay between the relocation and termination does evidence self-dealing.

The trial court was the trier of fact, and its findings of fact prevail unless they are against the great weight and clear preponderance of the evidence. Moreover, the evidence must be viewed most favorably to the findings. *Columbia Stamping & Mfg. Co. v. Reich* (1965), 28 Wis. 2d 297, 137 N. W. 2d 45.

The finding that there is no sufficient evidence of actual bad faith or self-dealing in connection with the termination of the plan is clearly supported by the evidence, *i.e.*, that the company's labor problems in Burlington, Wisconsin, resulted in the decision to move the plant to Kentucky; that the company's loss of its experienced personnel who understandably chose to remain in Wisconsin led to unforeseen losses incurred by the corporation

■

after the move and in having to find inexperienced personnel; that these losses led to the company's decision to find a buyer for the business; that the company acted on the premise that the existence of an ongoing and fully funded pension plan would be a definite asset to the prospective buyer who was going to take over the business and continue on with the same work force; that in negotiating with the prospective buyer, the officers of the company sought to persuade the buyer to adopt and carry on with the pension plan; and that it was only when the officers were satisfied that the prospective buyer would not do so that they exercised the authority to terminate the plan.

We conclude there is ample credible evidence in the record to support the trial court's finding on the issue of bad faith and improper self-serving.

*Recovery on the theory of unjust enrichment.*

Plaintiffs contend that payments to pension funds— even where the fund is created and contributions thereto are made solely at the employer's will—are in the nature of compensation for personal services and that to deprive an employee of that compensation after having accepted the employee's labor for that compensation, unjustly enriches the employer.

Noncontributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period. *Voight v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 128 N. W. 2d 411, at page 116.

Here the plaintiffs did not render services for the requisite period, since each plaintiff had terminated employment before he or she had qualified for pension benefits.

Plaintiffs further contend that when fulfillment of the conditions precedent to retirement benefits is made impossible because of the employer's actions, recovery should be allowed. The record does not support this contention. Some employees stayed with the company and some elected not to stay.

After hearing all the evidence at the trial, the trial court held that there was no evidence of fraud or bad faith.

If defendant company or its successor had decided to continue on with the business and retain the pension plan, the plaintiffs would have no right to participate. They did not meet the age and service requirements of the plan when their employment ended. We are satisfied that the laws of "unjust enrichment" and "substantial performance" are not applicable.

*By the Court.*—Judgment reversed with directions to dismiss the complaints.