LEIGHTON, Appellant, v. LEIGHTON, Respondent.

*No. 75–545. Submitted on briefs December 1, 1977.—Decided January 3, 1978.*

(Also reported in 261 N.W.2d 457.)

For the appellant the cause was submitted on the brief of *Gerald T. Flynn* of Racine.

For the respondent the cause was submitted on the brief of *Matthew H. Quinn* of Racine.

ROBERT W. HANSEN, J. This appeal of a portion of a judgment of divorce brings for review only the trial court's division of the assets of the parties and the denial of alimony to the plaintiff-wife.

## THE "LACEY" APPROACH.

In his memorandum decision the trial judge stated that he sought to divide the property of the parties "as

equally as I can," and under *Lacey,*[1] on this record, that endeavor was appropriate. Until *Lacey* the starting point and, often enough, the finishing point was ". . . one third of the marital estate to the wife . . . to be increased or decreased only by special circumstances."[2] In *Lacey* this court abandoned this "dower-type approach" and endorsed the concept that: "The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking."[3] According to *Lacey,* in a long marriage, as we have here, particularly as to property acquired by the parties during the marriage, as we have here, ". . . a fifty-fifty division may well represent the mutuality of the enterprise."[4] Of this partnership approach, we said that it ". . . gives great leeway and also places a heavy responsibility on trial courts in divorce cases. . . ."[5] However, in *Lacey* this court made clear that: "If on review the equitableness of a division of property is to depend upon the material facts and factors present in the case, it follows that a firm foundation for such division must be laid by including in findings or decision

---

[1] *Lacey v. Lacey,* 45 Wis.2d 378, 173 N.W.2d 142 (1970).

[2] *Id.* at 380.

[3] *Id.* at 382, where this court added: "It is literally a partnership, although a partnership in which contributions and equities of the partners may and do differ from individual case to individual case."

[4] *Id.* at 382, 383. In *Lacey* this court further held: "Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault." *Id.* at 383, 384.

[5] *Id.* at 383. The court there further held: "[B]oth flexibility and responsibility are called for by the endless variety of human situations that come to court in family cases."

the factors found relevant and considered by the judge."[6] On this appeal a principal issue is whether such firm foundation for trial court conclusions exists. So we will check the foundation laid as to each finding here challenged. It is true that in the *Vier Case*[7] our court held that violation of the *Lacey* guideline is not necessarily reversible error or even an abuse of trial court discretion[8] if this court can conclude from the record that the division of property or the award of alimony was reasonable. However, *Vier* gives this court the option of reviewing the record *de novo* and is not to be read to require this court in every case to search a record to locate reasons that might have occurred to a trial judge for a result that he reached without giving any explanation of how or why he reached it.

## REJECTION OF STIPULATION.

The wife argues on appeal that the trial court "should have given effect" to the stipulation of the parties as to the property division "which the parties had already carried out."[9] Reference is to the agreement of the parties reached after the commencement of the divorce proceedings dividing the marital estate. It is true that in this state parties to a divorce proceeding ". . . may enter an agreement dividing the property, providing for alimony, and settling other matters involved."[10] However, by such stipulations in advance of trial the divorcing parties cannot ". . . proscribe, modify, or oust the

---

[6] *Id.* at 386. This court has emphasized that: "If the findings of fact or the written decision do not indicate the basis on which the property was divided, and the reasons for so doing, review of the fairness of the result reached become not just difficult, it becomes impossible." *Id.*

[7] *Vier v. Vier*, 62 Wis.2d 636, 215 N.W.2d 432 (1974).

[8] *Id.* at 639, 640.

[9] Appellant's Brief at 17.

[10] *Miner v. Miner*, 10 Wis.2d 438, 442, 103 N.W.2d 4 (1960).

court of its power to determine the disposition of property, alimony, support, custody or other matters involved in a divorce proceeding."[11] In fact, in this state a stipulation between the parties in a divorce action is no more than ". . . a recommendation jointly made by them to the court suggesting what the judgment, if granted, is to provide."[12] In this state it is not even required that the family court accept or reject the stipulation *in toto* for ". . . the trial court has the right to make such modifications in the suggested provisions that the interests of justice . . . may require."[13] That the parties here partially implemented their agreement by transferring title and possession did not erode or alter the authority of the trial court to approve, reject or modify their stipulation regarding the property division. All that was accomplished here was to make the determination of an equitable division of the estate more difficult because some steps taken by the parties without court approval were not easily retraced. Instead of dividing up the nest eggs, the judge was required to unscramble an omelet, never an easy undertaking.

Regardless of the difficulties created by a premature implementation of an agreement between the parties, our court has held that a trial court ". . . has the same serious duty to examine carefully such agreements or stipulations . . . as it has in making a determination without the aid of such an agreement."[14] There is in this record no evidence that the trial court made such an examination of the merits of the stipulated recommenda-

---

[11] *Id.* at 443. Quoted in *Ray v. Ray*, 57 Wis.2d 77, 84, 203 N.W. 2d 724 (1973). *See also: Schmitz v. Schmitz*, 70 Wis.2d 882, 887, 236 N.W.2d 657 (1975). *In accord:* Sec. 247.10, Stats. 1975, and as amended in Marriage Laws Revision of 1977, ch. 105, sec. 20, 1977 Wis. Laws (effective February 16, 1978).

[12] *Bliwas v. Bliwas*, 47 Wis.2d 635, 638, 178 N.W.2d 35 (1970).

[13] *Id.* at 638, 639.

[14] *Miner v. Miner, supra,* n. 10, at 443.

tions of the parties. Instead the trial court concluded that the joint recommendations of the parties were no longer joint at the time of trial. The trial court found ". . . that counsel for defendant and defendant by his testimony objected to the entry of the stipulation, and that the defendant testified that he did not desire to be bound by the terms of said stipulation. . . ." While it is not a point briefed or argued on this appeal, we would not find it an abuse of discretion for a court to reject a stipulation of the parties on the ground that one party to it no longer recommended it to be included in the court's judgment. Abuse of discretion is the test.[15] We find no abuse of discretion in the trial court's refusal to recognize as a stipulation of the parties an earlier agreement between them, since repudiated by one of them.

## DENIAL OF ALIMONY.

The initial stipulation of the parties was that the defendant-husband would pay to plaintiff-wife $263 monthly alimony, the amount of his monthly veterans' disability benefits. Accordingly, at the request of the plaintiff, the family court commissioner set $263 per month as the amount of the temporary alimony to be paid by the defendant to the plaintiff. At the time of trial the wife requested alimony only for a limited period of time to enable her to find a suitable position as a trained nurse. She had recently undergone surgery for a radical left mastectomy, but testified that her doctor had given her a good prognosis as to the recurrence of the cancer. (In fact, the cancer did recur, and she

[15] *Anderson v. Anderson,* 72 Wis.2d 631, 638, 242 N.W.2d 165 (1976), where this court held: "[T]he division of property is a matter within the sound discretion of the trial court and will not be upset unless an abuse of discretion can be shown." *See also: Johnson v. Johnson,* 78 Wis.2d 137, 144, 254 N.W.2d 198 (1977).

had a radical right mastectomy since the trial.) The trial court did not award alimony but stated no reason for the denial in its memorandum decision, findings of fact, or conclusions of law. Under the *Lacey* rule earlier discussed such failure to state any reason or basis for a denial of alimony would be grounds for reversal. Even if we exercised the option given to us in *Vier* to avoid a reversal by locating in the record facts showing that the denial of alimony was reasonable, we could not sustain the award in this case. The trial court had three choices: (1) To award alimony; (2) to deny alimony, as it did; and (3) to hold the question of alimony open, retaining jurisdiction to make an alimony award if changed circumstances warranted it.[16] Here the wife had recently undergone major cancer surgery. It is common knowledge that recurrences of cancer are not unlikely. Because the health of the party seeking alimony is a major factor in determining if alimony is appropriate,[17] we conclude, at least on this record, the reasonable choice would have been to hold the matter of alimony open and to retain the right to make an alimony award if a recurrence of cancer should so require. While we so hold, we see this case as demonstrating the wisdom of the rule laid down in *Lacey,* that the failure of the trial court to explain its determination is in itself ground for reversal and making clear why the option given by this court in *Vier* ought be a rare enough exception to it.

[16] *See: Kronforst v. Kronforst,* 21 Wis.2d 54, 123 N.W.2d 528 (1963). In that case the majority reversed an award of permanent alimony, but all members of the court agreed that the trial court should retain jurisdiction to award alimony in the future in the event of a substantial change in circumstances.

[17] *Yasulis v. Yasulis,* 6 Wis.2d 249, 253, 94 N.W.2d 649 (1959); *Lacey v. Lacey, supra,* n. 1, at 383; *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 85, 248 N.W.2d 417 (1977).

A closely related challenge is to that portion of the judgment that charged the wife's share of the estate $1,000 for rent received from leasing the homestead and money received for temporary alimony between the time of trial and the date of the decision. Rent received from leasing part of the marital estate during the pendency of the divorce action can be considered part of the gross estate. However, we find in this record no indication of the amount of rent that the wife in this case actually received. In addition, the court's decision to charge court-ordered temporary alimony payments against the wife's share of the estate cannot stand. Whatever the result would be if we were here dealing with arrearages in court-ordered temporary alimony payments,[18] temporary alimony received by this plaintiff cannot be considered part of her estate under the divorce judgment. That the charge-back was for the period of time after the trial but prior to the judgment is hardly justification for it. The temporary alimony order was in effect during that time, and court-ordered temporary alimony payments prior to the divorce judgment are not properly considered a charge against the portion of the marital estate awarded to the plaintiff.

## INTEREST IN TEACHERS' RETIREMENT PLAN.

The wife contends that the trial court should have included the present value of her husband's interest in the teachers' retirement plan as an asset of the marital estate. (Such interest, she contends, has a present value of $3,000, the figure the parties agreed upon in their initial stipulation.) The evidence in this record is sketchy as to the exact nature of defendant's interest in the pension system. Although it was not clearly estab-

---

[18] See: Kronforst v. Kronforst, supra, n. 16, at 60. See also: Tesch v. Tesch, 63 Wis.2d 320, 217 N.W.2d 647 (1974).

lished, the plan does not appear to vest any nonforfeitable rights in the husband if he quits or is terminated before retirement. While the original stipulation of the parties included the husband's interest in the school retirement plan as a marital asset, the trial court made no mention of it in its decision or findings and clearly did not include it in the list of the assets of the parties to be divided between them.

The general rule in this state is that a spouse's interest in a retirement fund is to be taken into account by the trial court in making the division of the estate.[19] However, this decision noted that the husband's interest in the retirement fund by its very nature is an asset that is incapable of division by the court between the parties[20] and that it is very difficult to value.[21] The reason for this is not hard to locate. It relates to the dual nature of most retirement plans: (1) If the employee remains in service until retirement age, his payments are in the nature of deferred income; but (2) if he quits or his employment is terminated, the usual provision for at least return of contributions constitutes an asset available to the participant at his option. Our problem in this case is that this pension plan interest appears to be unvested, meaning that, if the defendant quits or is fired before reaching pension age, it appears that he would forfeit all of his and his employer's contributions for him to the fund. While the recently enacted revision of the divorce statutes resolves this question by authorizing

[19] *Schafer v. Schafer*, 3 Wis.2d 166, 170, 171, 87 N.W.2d 803 (1958). *See also: Schneider v. Schneider*, 15 Wis.2d 245, 248, 112 N.W.2d 584 (1961); *Pinkowski v. Pinkowski*, 67 Wis.2d 176, 179, 226 N.W.2d 518 (1975); *Parsons v. Parsons*, 68 Wis.2d 744, 752, 753, 229 N.W.2d 629 (1975); *Johnson v. Johnson, supra*, n. 15, at 143.

[20] *Id.* at 170, 171.

[21] *Id.* at 171.

the trial court to consider both vested and unvested interests in pension funds in dividing the marital assets,[22] the question of whether unvested interests in retirement plans are to be taken into account in property divisions under the statute now in effect[23] is one of first impression in this court and must be decided by this court, at least until the new statute takes over.

Courts in other states have divided on the question of whether an unvested interest in a pension fund is to be considered in the property division. Some answer in the affirmative,[24] some in the negative.[25] However, we rely on cases in this state to find the basis for an affirmative answer. While these cases dealt with vested rights in a pension system, we find their rationale equally applicable to unvested rights.[26] Moreover, in cases dealing with other contingent interests, such as a remainder of in-

---

[22] Ch. 105, sec. 41, 1977 Wis. Laws, providing: "*247.255 Property division*

"Upon every judgment of annulment, divorce or legal separation . . . the court shall divide the property of the parties. . . . The court shall presume that all other property except inherited property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

". . .

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests."

[23] Sec. 247.26, Stats.

[24] *See: Wilder v. Wilder*, 85 Wash.2d 364, 534 P.2d 1355 (1975); *In re Marriage of Brown*, 126 Cal. Rptr. 633, 544 P.2d 561 (1976).

[25] *See: White v. White*, 136 N.J. Super. 552, 347 A.2d 360 (1975); *Lumpkins v. Lumpkins*, 519 S.W.2d 491 (Tex. 1975).

[26] *See: Parsons v. Parsons*, 68 Wis.2d 744, 753, 229 N.W.2d 629 (1975), where our court held: "[T]o properly determine the value of the interest in the retirement trust it would be necessary to determine its present value." *Pinkowski v. Pinkowski, supra*, n. 19, at 179, 180, where we held: "The trial court . . . said, 'It is clear that Mr. Pinkowski should not be required to terminate his employment so that the proceeds of his retirement program

terest in a testamentary trust,[27] or an interest in a profit-sharing trust,[28] we have held that the fact that the interest is contingent does not mean it may be ignored in property divisions in divorce actions. This is not to hold that an interest in a pension plan, vested or unvested, is to be treated the same as other physical assets of the parties. There can be no set rule, and the only rule, as one court has phrased it, is that the trial court ". . . must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension."[29] Thus it would continue to be the rule that it is not error to exclude an interest in a pension fund from the division of estate if it is considered as income in awarding alimony.[30] Furthermore, the rule that the trial court must consider both vested and unvested interests in a pension plan, either in the division of property or in the award of alimony, jibes with the cases in our state holding that the employee's interest in a pension plan, even one that is noncontributory on his part,

---

would be available for division.' We agree. However, the present value of the fund as determined by the trial court must be included in the assets to be divided between the parties." *Schafer v. Schafer, supra,* n. 19, at 171, this court holding: "Where an asset such as this interest in a government retirement fund has no market value, its intrinsic value may have to be determined as best the court can in order to do justice between the parties."

[27] In *Trowbridge v. Trowbridge,* 16 Wis.2d 176, 184, 114 N.W. 2d· 129 (1962), this court stated: "We have no doubt that a future interest of the type given to Richard by his father's will is part of his 'estate, both real and personal' for the purpose of sec. 247.26, Stats."

[28] In *Kronforst v. Kronforst, supra,* n. 16, at 63; the court held: "The trial court properly· included the $9,749 value of defendant's interest in his employer's profit-sharing trust in making the division of estate." Citing *Schneider v. Schneider, supra,* n. 19, at 248; and *Schafer v. Schafer, supra,* n. 19, at 170.

[29] *Wilder v. Wilder, supra,* n. 23, at 1358.

[30] *Kronforst v. Kronforst, supra,* n. 16, at 63, 64; and *Johnson v. Johnson, supra,* n. 15, at 143.

is not a mere gratuity or expectancy, but an enforceable contract right.[31] Thus it was reversible error for the trial court to have failed to take into account the defendant's interest in the teachers' retirement plan either in the property division or the alimony award.

## VETERANS' DISABILITY PENSION.

The wife contends that in making a division of assets of the parties the trial court should have considered the present value of the monthly veterans' disability benefits that the husband was receiving from the federal government, and, assuming permanent disability, that he would continue to receive for his lifetime. We sharply distinguish the service-connected disability pension from a present interest, vested or unvested, in a retirement plan or an interest in a testamentary trust or profit-sharing trust. As the defendant points out in his brief: "This pension is compensation to Mr. Leighton for impairment of his body. It is not in the nature of an asset acquired or accumulated through the marital relationship."[32] The disability allowance is a federally-provided replacement for earning capacity lost by reason of injuries sustained while in military service. It is analogous to a disability benefit paid under the Social Security Act to a disabled or handicapped worker. In the *Kronforst Case*,[33] this court had before it the situation where, in addition to defendant-husband's interest in his employer's profit-sharing trust, treated as an asset in making the division of estate and properly so, the defendant-husband

[31] *Zemaitis v. Burlington Mills, Inc.*, 56 Wis.2d 449, 459, 202 N.W.2d 244 (1972); *Thornbery v. MGS Co., Inc.*, 46 Wis.2d 592, 601, 176 N.W.2d 355 (1970); and *Voigt v. South Side Laundry & Dry Cleaners*, 24 Wis.2d 114, 116, 128 N.W.2d 411 (1964).

[32] Respondent's Brief at 17.

[33] *Kronforst v. Kronforst, supra*, n. 16.

was also receiving a $121 per month social security disability benefit. This benefit was treated as income in the court's determination of the appropriate alimony award and not as an asset in the division of the marital estate.[34] We similarly view the disability benefits in the case before us as income to the defendant, material only to his ability to pay alimony, if alimony were awarded. His disability allowance is to be considered as part of his earned income, literally so, and not as an asset to be divided between the parties.

Finding reversible error in the trial court's failure to provide the "firm foundation" that *Lacey* requires or in fact any foundation at all for its denial of alimony to the plaintiff, and finding reversible error in the trial court's failure to take into account the defendant's interest in the teachers' retirement fund in making the division of estate of the parties, and in charging the defendant's temporary alimony payments against the plaintiff's share of the estate, we must set aside that part of the judgment of divorce dealing with division of estate and remand the cause for retrial of the issues of alimony and division of estate, including the court's valuation of the assets. Therefore, we need not reach the final issue raised by the plaintiff of whether the trial court's valuation of the Florida lot and the Florence county property was contrary to the great weight of the evidence.

*By the Court.*—That part of the judgment granting an absolute divorce to Shirley Leighton is affirmed; that part of the judgment dividing the marital assets of the parties is reversed, and cause remanded for further proceedings not inconsistent with this opinion.

---

[34] *Id.* at 64.