## IN RE the MARRIAGE OF: Verdeen DUFFY, Joint-Petitioner-Respondent,

v.

## Richard P. DUFFY, Joint-Petitioner-Appellant.

Court of Appeals

*No. 85–0433. Submitted on briefs May 23, 1986.—Decided June 19, 1986.*

(Also reported in 392 N.W.2d 115.)

For the joint-petitioner-appellant the cause was submitted on the briefs of *James A. Lagodney* and *Loeb, Ching & Lagodney, S.C.* of Madison.

For the joint-petitioner-respondent the cause was submitted on the brief of *Carolyn P. Schoenwald* and *Schoenwald & White* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.    Richard Duffy appeals from the portion of a divorce judgment dividing the parties' property. The issues are whether the trial court abused its discretion by: (1) including the present value of state benefits to be received by Richard after age sixty-five in the marital estate; (2) according little or no weight to the uncontradicted testimony of a psychiatrist; (3) failing to articulate the reasons for the division; and (4) failing to include interest on a $3,954.94 "equalization payment" to be made in the future. We find no abuse of discretion with respect to the first three issues. We reverse on the fourth, however, and remand to the trial court with directions to provide for interest on the $3,954.94 payment or to state its reasons for not doing so.

The facts are not in dispute. Richard and Verdeen Duffy were divorced in 1985 after thirty-three years of marriage. All their children are grown. Their house and Richard's employee benefits are the only marital assets of significant value.

Richard worked in public education for twenty-two years. As a public employee, he participated in the Wisconsin Retirement System. By 1980, Richard had become permanently and totally disabled and began receiving monthly disability payments from the Wisconsin Department of Employee Trust Funds

(WDETF). Richard was fifty-four at the time of the divorce, and the trial court treated the payments he would receive after age sixty-five as the equivalent of a retirement pension. The court assigned a present value to those benefits and awarded approximately fifty percent of the marital estate to each party, with Verdeen receiving the couple's residence. Other facts will be discussed below.

The division of marital property is committed to the sound discretion of the trial court, and we will reverse only where that discretion has been abused. *Bahr v. Bahr,* 107 Wis. 2d 72, 77, 318 N.W.2d 391, 395 (1982). An abuse occurs when the court fails to consider proper factors, bases its decision on mistaken facts, or when it makes an inadequate or excessive division. *In Matter of Marriage of Jasper v. Jasper,* 107 Wis. 2d 59, 63–64, 318 N.W.2d 792, 794–95 (1982). A court also abuses its discretion when it bases its decision on an erroneous view of the law. *State ex rel. North v. Goetz,* 116 Wis. 2d 239, 245, 342 N.W.2d 747, 750 (Ct. App. 1983).

## 1.  DISABILITY BENEFITS

Richard argues that his state benefits, present and future, are disability benefits and not subject to division, citing *Leighton v. Leighton,* 81 Wis. 2d 620, 261 N.W.2d 457 (1978).

In *Leighton,* the husband was injured while in military service and received disability payments from the federal government. The court distinguished the benefits from those paid under traditional retirement or pension plans, treating them as earned income, rather

than as an asset of the marriage. *Leighton,* 81 Wis. 2d at 636–37, 261 N.W.2d at 464–65. A similar result was reached in *Pfeil v. Pfeil,* 115 Wis. 2d 502, 505–06, 341 N.W.2d 699, 701–02 (Ct. App. 1983), where the court offered an additional reason for the nondivisibility of military disability benefits—the intent of Congress as expressed in laws shielding the benefits from certain creditors' claims. We do not consider either case as controlling.

Richard Teskoski, a WDETF employee who handled Richard's account, testified as to the structure of the Wisconsin Retirement System and Richard's participation in it. His testimony was uncontradicted. According to Teskoski, the system is funded by employee and employer contributions and provides retirement and disability benefits to public employees. All employees have individual accounts in the fund, and all benefits, whether for retirement or disability, are paid through those accounts.[1] The payment amounts are determined by the length and type of employment and the highest or most recent wage level attained. For disability payments, the actual years of service are augmented by the number of years remaining until normal retirement.

Teskoski testified that Richard had three options when he became disabled in 1980: he could liquidate his account and receive a lump sum, representing his accumulated contributions plus interest; he could

---

[1] Sections 40.04(4)(a)2 and 3, Stats., establish separate accounts for each employer-participant, and each year each account is credited with interest and other accumulations and is debited by amounts available in the account for funding the benefits chosen by the employee. Notwithstanding these provisions, retirement annuities are paid for life. Section 40.23(2).

leave his money in the fund to accumulate interest until he reached retirement age, at which time he would be paid an annuity; or he could apply for monthly benefits. He chose the last option, and he will receive the benefits for the rest of his life, subject, for a time, to annual medical verification of his disability.[2]

The trial court was careful to distinguish between those benefits received by Richard prior to reaching retirement age and those accruing thereafter, treating the former as exempt disability payments under the rule of *Leighton* and *Pfeil* and the latter as the equivalent of a pension. The fund itself makes a similar distinction. Teskoski testified that after age 65 a disabled employee need no longer secure annual medical certification of the continuation of his or her disability in order for the benefits to continue. From that point on, Richard's benefits will continue as before for the rest of Richard's life and they are indistinguishable from normal pension benefits.

We conclude, therefore, that the trial court did not err in treating the benefits Richard will receive after he reaches age sixty-five as the equivalent of a pension. The court selected an appropriate method of valuing the benefits, and its valuation is supported by the evidence.[3]

---

[2] According to Teskoski, after age 65 medical certification of disability is no longer required for continuation of the benefits.

[3] Richard also asserts that the expert testimony supporting the court's valuation of the present value of his post 65 benefits is flawed because it is based on average life expectancies and fails to consider his "precarious health."

The record contains repeated references to Richard's health and his serious and continuing disabilities. There is no direct evidence that any of the conditions are life-threatening, however, or that Richard has a diminished life expectancy. The court did not

## II. MEDICAL EVIDENCE

In support of his request that he be awarded the parties' house, Richard's psychiatrist testified that living in the house would be a "positive benefit" to Richard in light of his statement that he enjoys gardening and household tasks. Such activities, according to the psychiatrist, help lessen tension. The trial court declined to accept the psychiatrist's recommendation, noting that gardening and similar household tasks are pursuits Richard could easily follow at other locations. The court awarded the house to Verdeen, after considering the other evidence in the case, including the competing desires of both parties and the inability of either to refinance the property on his or her own.

Richard argues that, by so ruling, the trial court impermissibly ignored "credible and uncontradicted testimony of a medical expert." "Positive uncontradicted testimony *as to the existence of some fact, or the happening of some event,* cannot be disregarded by a court . . . in the absence of something in the case which discredits . . . it. . . ." (Emphasis added.) *Trinity Memorial Hosp. v. Milwaukee,* 98 Wis. 2d 220, 225–26, 295 N.W.2d 814, 817 (Ct. App. 1980), quoting *Thiel v. Damrau,* 268 Wis. 76, 85, 66 N.W.2d 747, 752 (1954). The psychiatrist's only testimony on the point, how-

---

abuse its discretion in adopting the expert's uncontradicted testimony as to the present value of the benefits. Reducing a future pension interest to its present value is an acceptable method of treating such an asset, *Bloomer v. Bloomer,* 84 Wis. 2d 124, 134–36, 267 N.W.2d 235, 240–41 (1978), and Richard has not persuaded us that the court erred in selecting this method over any others it might have used.

ever, did not relate to any fact or event; it was simply that Richard told him that he enjoys gardening and working around the house and that the psychiatrist felt that, to the extent awarding the house to Richard would allow him to continue such activities, it would be "a positive benefit in his future."[4] This is not the type of testimony discussed in *Trinity Hospital,* and its presence in the record does not require reversal of the court's order.[5]

---

[4] The testimony was as follows:

Q: In your treatment has he discussed with you his interests in acquiring a home or having a home?

A. Yes. He has often talked about his experience as an adolescent, young man working in a greenhouse, working with flowers and plants, flower arrangements and the like and has talked very positively about the contentment, relaxation he obtains by working in his own home, tending the garden, doing fix-it tasks around the house and yard so it has been a very important positive experience for him and it has helped I think to lessen the high tension level that he ordinarily struggles with.

. . . .

Q: Do you see the award of the family house to him as a positive benefit in his future, to partake of the items, the interests that he's shown?

A: Absolutely. He's often talked of this and he is very distressed in terms of the prospect of not being able to continue to live there.

[5] The evidence at issue in *Trinity Hospital* was documentary; it consisted of an application for general relief containing the patient's personal and financial data. The court, citing the quoted rule, held that, in the absence of proof rendering the information contained in the exhibit inherently improbable, the jury was not free to disregard it.

In this case, the testimony (quoted *supra,* note 3) establishes

## III. THE TRIAL COURT'S REASONING

Richard correctly points out that a divorce court should articulate the reasons underlying its division of property in light of the recognized decisional guidelines developed by the legislature and the supreme court. *Marriage of Haugan v. Haugan,* 117 Wis. 2d 200, 215, 343 N.W.2d 796, 803–04 (1984). Richard's specific complaints are that the trial court did not consider his or Verdeen's age, physical and emotional health or earning capabilities. We disagree. The court's memorandum decision and its findings of fact and conclusions of law discuss these factors, as well as other relevant criteria, in detail,[6] and they set forth a reasoned resolution of the parties' contentions based on those criteria. Richard's real complaint is that his position did not prevail, and his argument, however wide-ranging, is without merit.[7]

no more than that Richard enjoyed house and yard work and that "partak[ing] of [such] interests" can be of benefit to him.

[6] A trial court need not consider every factor set forth in the statutes and cases. *Fuerst v. Fuerst,* 93 Wis. 2d 121, 131, 286 N.W.2d 861, 865 (Ct. App. 1979). The court's memorandum decision discusses the length of the marriage, the parties' educational and employment histories, Richard's illnesses, his mental health and total disability, and the parties' savings and retirement/disability pension interests, among other things.

The findings of fact and conclusions of law expand upon all of these matters. In addition, they discuss the parties' ages, the nature and value of their personal property, their contributions to the marriage, and several other factors, all of which entered into the court's decision to award the house to Verdeen.

[7] Richard argues in passing that the court erred when it treated a $5,000 gift to Verdeen as exempt from the property divi-

## IV.  THE EQUALIZATION PAYMENTS

■ The trial court directed Verdeen to pay Richard the sum of $3,954.94 within nine months of entry of judgment to "equalize" the property division in light of the award of the house to Verdeen. Richard claims that the court abused its discretion by failing to provide for interest on the payment.

When installment payments are awarded to one party in a divorce, interest is appropriate. *Jasper,* 107 Wis. 2d at 69–70, 318 N.W.2d at 797. If no interest is to be charged on Verdeen's delayed payment, the court should state its reasons for so ordering. *Corliss v. Corliss,* 107 Wis. 2d 338, 347, 320 N.W.2d 219, 223 (Ct. App. 1982). We reverse on this point and remand to allow the trial court to either provide for interest on the delayed payment or to state its reasons for not doing so.

■ Finally, one of the debts considered by the trial court was a $9,400 obligation to WDETF which resulted from an overpayment of Richard's income continuation benefits. The court directed Richard to assume that obligation "subject to one-half reimbursement from Mrs. Duffy when the debt is satisfied or resolved." The parties disagree as to whether the court intended Verdeen's contribution to be payable only after the entire debt is satisfied or whether she must contribute half of any periodic installment payments made by Richard, should he compromise the

---

sion. He claims the gift lost its exempt status when it was comingled with marital funds. The record indicates that Verdeen placed the $5,000 in a separate, individual savings account. The funds are identifiable and traceable.

debt. We direct the court, on remand, to resolve this dispute as well.

## CONCLUSION

We reverse the judgment of the trial court insofar as it directs Verdeen to pay the sum of $3,954.94 to Richard without providing for interest or stating reasons for its disallowance. On remand, the trial court is also directed to clarify its ruling on Verdeen's duty to reimburse Richard for satisfaction of the debt to the Department of Employee Trust Funds. In all other respects, the judgment is affirmed.

*By the Court.*—Judgment affirmed in part and reversed in part. Cause remanded for further proceedings consistent with this opinion.