In re Gary L. PANSIER, Debtor.

Gary L. PANSIER, Plaintiff,

v.

STATE OF WISCONSIN DEPARTMENT OF REVENUE and Internal Revenue Service, Defendants.

Bankruptcy No. 90–20906–JES.
Adversary No. 90–2173.

United States Bankruptcy Court, E.D. Wisconsin.

April 24, 1997.

Gary L. Pansier, Crivitz, WI, Pro se.

Mary E. Bielefeld, Trial Attorney, Tax Division, U.S. Department of Justice Washington, DC.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

Gary L. Pansier ("Pansier" or "debtor"), appearing *pro se*, has filed a motion for contempt against the Internal Revenue Service ("IRS").[1] The issue presented is whether the IRS' federal tax lien extends to post-petition disability payments received by a debtor after he has filed a bankruptcy petition and whose underlying personal liability has been discharged. The IRS acknowl-

---

**1.** Presumably, Pansier is relying upon the permanent discharge injunction provision of 11 U.S.C. § 524(a)(2), which states:

§ 524. Effect of discharge.
(a) A discharge in a case under this title—
\* \* \* \* \* \*
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

edges that the debtor's tax obligations for the years 1982 and 1983 were discharged and that it cannot seek recovery against the debtor personally. The question remains, however, whether the IRS can levy on its pre-petition federal tax lien to satisfy the discharged tax debt for 1982 and 1983 by levying upon the post-petition disability payments received by the debtor. This, in turn, requires a determination as to whether the post-petition disability payments are covered by the IRS' tax lien as "property" or "rights to property" within the meaning of 26 U.S.C. § 6321.[2]

Hearings on this matter were held on December 5, 1996; January 9, 1997; and March 13, 1997. The parties have submitted briefs, presented testimony, and made oral arguments.

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(K) and (O).

### FACTS

From 1975 until December of 1987, Pansier was a commercial airline pilot for Republic Airlines and its successor, Northwest Airlines, Inc. In 1987, Pansier began receiving disability payments under a disability insurance policy from the insurance carrier formerly known as AMEX Life Insurance Company and now known as G.E. Capital Assurance Co. The IRS assessed unpaid taxes against Pansier on January 23, 1989 and recorded its notice of federal tax lien on August 17, 1989 with the Register of Deeds for Marinette County, Wisconsin. The amount assessed for 1982 was $16,237.07 and for 1983 was $48,320.97.

On February 26, 1990, Pansier filed a petition in bankruptcy under chapter 7. On May 30, 1990, he received a discharge in bankruptcy. On May 24, 1990, Pansier initiated this adversary proceeding (Adversary No. 90–2173) against the IRS seeking a determination of dischargeability of his federal tax obligations for 1982 and 1983. On October 9, 1990, pursuant to a stipulation between the

IRS and Pansier, this court entered an order declaring Pansier's federal income tax liabilities for 1982 and 1983 to the IRS discharged, but also stating that nothing contained within the order affected the IRS' lien rights as against Pansier's pre-petition property.

On August 26, 1996, the IRS proceeded to levy on the disability payments being received by Pansier. As a result of such levy, IRS received two payments totalling $5,328.66. $3,109.80 of this amount was applied by the IRS to satisfy income tax liabilities for years which are indisputably not dischargeable by Pansier's bankruptcy. However, the balance of these two payments ($2,218.86) was applied by the IRS to the 1983 tax year. Pansier contends that this action by the IRS in applying $2,218.86 to discharged liabilities was improper and constitutes contempt. The IRS responded by filing a motion for summary judgment and claiming that its pre-petition lien covered the post-petition disability payments, that Pansier, at the time he filed for bankruptcy, held a vested pre-petition right to receive these payments, and that the IRS should be permitted to keep the levied proceeds applied to the 1983 tax year.

### ANALYSIS

Upon the IRS assessing unpaid taxes under 26 U.S.C. § 6321, a federal tax lien was created on all property or rights to property whether real or personal belonging to the taxpayer. This lien, however, does not attach to a property or a right to property acquired by the debtor after the petition in bankruptcy has been filed, where the underlying tax liability is discharged against the debtor personally. *Anderson v. United States (In re Anderson)*, 149 B.R. 591, 595 (9th Cir. BAP 1992). A valid tax lien against a dischargeable debt can only be satisfied to the extent it is paid from pre-petition assets. *Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy* § 16.08(k) (1997). Tax liens securing dis-

---

2. § 6321. **Lien for taxes.**
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

chargeable debts do not attach to a debtor's post-petition after acquired property. *Leavell v. United States (In re Leavell)*, 124 B.R. 535, 540 (Bankr.S.D.Ill.1991). The threshold question here is: Did Pansier, when he filed his petition in bankruptcy, hold "property" or "rights to property" in the disability payments he received after the filing of his bankruptcy?

■ The IRS cannot have any rights in a debtor's property which are greater than the rights the debtor himself has in such property. *Vulcan Materials Co. v. Jack Raus, Inc. (In re HLW Enterprises of Texas, Inc.)*, 157 B.R. 592, 596 (Bankr.W.D.Tex.1993). If Pansier had a property interest or rights to property in his future disability payments when he filed his petition in bankruptcy, the IRS tax lien would attach to these payments, and the IRS would not have violated the permanent injunction under § 524. However, if Pansier did not have any property interest or rights to property with respect to these post-petition disability payments, the actions by the IRS would have violated § 524.

■ In addressing this question, state law must be examined. The United States Supreme Court has stated that, "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). That pronouncement was recently reiterated by the Seventh Circuit in *United States v. Librizzi*, 108 F.3d 136, 137 (7th Cir.1997). State law determines the nature of the interest, if any, which the debtor has in such property. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979).

Pansier now is and was, when he filed his bankruptcy petition, a resident of the Village of Crivitz, Marinette County, Wisconsin. He also resided there when the IRS assessed and recorded its tax lien against him. The IRS acknowledges that Wisconsin law is controlling on the issue of whether Pansier, when his bankruptcy petition was filed, held any property interest or rights to property with respect to the post-petition disability payments. *Leighton v. Leighton*, 81 Wis.2d 620, 261 N.W.2d 457 (1978), is the controlling case in Wisconsin on this issue. *Leighton*, which arose in the context of a divorce case, held that disability payments are a replacement for income and not marital property subject to a division between the parties. *Leighton* sharply distinguished disability payments on the one hand from retirement benefits or benefits under a testamentary or profit sharing trust on the other hand, concluding that disability payments were more akin to "income" while retirement benefits and the like are more in the nature of "property." *See also Weberg v. Weberg*, 158 Wis.2d 540, 544, 463 N.W.2d 382, 383 (Ct. App.1990).

■ Wisconsin courts look to certain factors in analyzing this issue. In *DeWitt v. DeWitt*, 98 Wis.2d 44, 296 N.W.2d 761 (1980), the court ruled that an educational degree is not "property" subject to a division between the parties. The court observed that an educational degree does not have any objective transferable value on the open market, cannot be assigned, and terminates upon the death of the holder. By the same token, in the case at bar, Pansier's interest in his disability payments lacks any objective transferable value on the open market, cannot be assigned, and terminates upon his death. Moreover, Pansier's right to receive disability payments is entirely dependent upon his remaining disabled and undergoing a planned program of observation and treatment by a physician in order to continue to qualify for these benefits. Disability payments are a form of compensation and not property of the estate where there are conditions imposed upon the recipient before the disability benefits are received. *Cf. In re Haynes*, 679 F.2d 718, 719 (7th Cir.), *cert. denied*, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982) (retirement benefits). Also, the disability insurance policy does not provide any lump sum or fixed annuity option to Pansier and is subject to being terminated by the policy holder at any time. All of these factors are foreign to the concept of "property" or "rights to property" as interpreted under Wisconsin law.

The IRS has not directed this court's attention to any Wisconsin cases which hold that post-petition disability payments are property subject to a federal tax lien. The only cases cited by the IRS and dealing directly with this issue emanate outside of Wisconsin. *Fried v. New York Life Ins. Co.,* 241 F.2d 504 (2d Cir.1957), involved New York law; and *Tillery v. United States (In re Tillery),* 204 B.R. 575 (Bankr.E.D.Okla. 1996), involved Oklahoma law. This court refuses to ignore Wisconsin law as established by *Leighton* in favor of conflicting law from other states. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which was cited by the IRS and did arise out of Wisconsin, is inapposite. It is limited in scope in its holding that a teacher, whose contract for employment was not renewed, is entitled to a hearing provided that teacher demonstrates that he or she has a "property interest" which is "more than an abstract need or desire" for re-employment. Such teacher must demonstrate a "legitimate claim of entitlement" to re-employment. A "property interest" in future disability payments cannot be compared to a "property interest" for purposes of determining a right to a hearing for re-employment. That would be tantamount to comparing apples to oranges. The other cases relied upon by the IRS either involve disability payments which do not address the issue of whether they are a form of property or involve retirement benefits. As previously noted in *Leighton,* Wisconsin treats retirement benefits differently from disability payments with respect to deciding what is "property" or "rights to property."

Wis.Stats. § 70.04, cited by the IRS, also does not provide an answer to the issue at hand. Wis.Stats. § 70.04 defines personal property as including, "all goods, wares, merchandise, chattels, and effects, of any nature or description having any real or marketable value...." The post-petition disability payments, which lack any "real or marketable value," do not fit within this definition.

Pansier's arguments, for the most part, are not helpful. They have the familiar ring of meritless arguments which, from time to time in the past, have been raised by tax protestor groups. Primarily, they constitute an attack on the IRS, are of no relevancy in disposing of the issue which confronts this court, and are spurious in nature.

■ Pansier also maintains that the IRS did not timely commence an action under §§ 523(a)(2), (4), (6), or (15) of the Bankruptcy Code or timely object to his exemptions to the disability payments. He then reasons from this that the IRS is precluded from collecting on dischargeable debts by seizing post-petition disability payments. This same argument was made in *Matter of Driscoll,* 57 B.R. 322, 327 (Bankr.W.D.Wis. 1986), and was summarily rejected by Chief Bankruptcy Judge Robert D. Martin. This court does so likewise. Under 11 U.S.C. § 522(c)(2)(B), bankruptcy exemptions are not effective against federal tax liens. The federal tax lien attaches to all of the debtor's property, without exception. *In re Voelker,* 42 F.3d 1050, 1052 (7th Cir.1994). Moreover, this case has nothing to do with the discharge exceptions under §§ 523(a)(2), (4), (6), or (15). The IRS is not challenging the fact that Pansier is released from personal liability for the unpaid tax debts for 1982 and 1983. A discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability. *Matter of Edgeworth,* 993 F.2d 51, 53 (5th Cir.1993). The question remains whether the federal tax lien can, nonetheless, attach to the post-petition disability payments and then be applied to the unpaid taxes for 1982 and 1983.

Oddly enough, in spite of Pansier's ineffective arguments, he prevails here. This court concludes that the post-petition disability payments do not constitute "property" or "rights to property" under Wisconsin law. At the time Pansier filed for bankruptcy, he had no property or rights to property within the meaning of 26 U.S.C. § 6321 in any of the future post-petition disability payments which he later received. The IRS' tax lien, therefore, cannot be used to satisfy Pansier's unpaid tax obligations for 1982 and 1983 from the post-petition disability payments. When the IRS levied upon the post-petition disability payments and then applied $2,218.86 of these payments to the tax year 1983, it violated § 524 of the Bankruptcy Code.

The IRS' motion for summary judgment is **DENIED,** and the debtor's motion for contempt is **GRANTED.** The IRS is directed to forthwith return $2,218.86 to Pansier.

Because Pansier was not represented by an attorney, this court cannot award any attorney's fees. *Davis v. United States (In re Davis),* 201 B.R. 835, 837 (Bankr. S.D.Ala.1996). Furthermore, under 11 U.S.C. § 106(a)(3), punitive damages cannot be imposed against the IRS. However, Pansier is awarded, as compensatory damages, the sum of **$111.60** as reimbursement for his travelling expenses.[3]

The foregoing constitutes this court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

A separate order shall be entered.

---

**3.** The compensatory damages have been computed as follows: three (3) round trips between Crivitz, Wisconsin (residence of the debtor) and Green Bay, Wisconsin (bankruptcy hearing site), a distance of 60 miles. This breaks down as follows: 3 round trips × 120 miles × 31¢/mile = $111.60.