Argued January 8, reversed May 28, 1970

FIELDS ET AL, *Respondents, v.* WESTERN
EQUIPMENT CO. ET AL, *Appellants.*

469  P2d  779

*Paul D. Clayton*, Eugene, argued the cause for appellants. With him on the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*William Frye*, Eugene, argued the cause for respondents. With him on the brief were Husband, Johnson & Frye.

Before Perry,* Chief Justice, and McAllister, Sloan,* O'Connell, Denecke, Holman and Tongue, Justices.

O'CONNELL, J.

This is a suit for declaratory judgment brought by the former employees of defendant Western Equipment Co. to establish their rights under a profit sharing plan. The case was tried before the court without a jury. Defendants appeal from a judgment in favor of plaintiffs.

Defendant Western Equipment Co. had maintained the profit sharing plan in question for the benefit of its employees since 1959. The plan may be described generally as follows: Each year the employer deposits in trust for each employee participant a certain sum determined according to a formula based on the employee's salary and the company's profits. The contribution paid by the employer for the benefit of the various employees is administered and invested as a single trust fund. Annual accretions to the fund are

---

* Perry, C. J. and Sloan, J. did not participate in this decision.

allocated pro rata among the separate employees' accounts.

The employees acquire no vested interest in the fund by virtue of the allocations; the accounts are merely records of allocations and do not reflect any vested rights in the employees. The plan provides, however, that each employe acquires over a period of time a vested interest in the amounts in his account. This vested interest accrues in 20% increments over a five-year period. The operative provision setting forth this aspect of the plan is contained in the "Profit Sharing Plan and Trust" document and reads as follows:

## "ARTICLE VI

"1. FORFEITABLE AND NON-FORFEITABLE INTERESTS: Allocations to Participants in accordance with the provisions of Article V shall not vest any right or title to any part of the assets of the trust.

"2. At the end of his first year in the plan, a Participant shall have vested and non-forfeitable interest in 20% of the amount credited to his account. At the end of each additional full year of continuous service, an additional 20% of the amount shall become vested, so that after five full years of continuous service the full amount credited to his account shall become vested and non-forfeitable, except that: * * *"

When an employee's service terminates, amounts allocated to his account which are not yet vested are forfeited and distributed pro rata among the other accounts. Vested amounts are paid to the terminated employee.

Each of the plaintiffs was a participant in the plan while working for defendant company. Upon termina-

tion, each received payments which defendant contends constituted the employees' total vested interest in the plan. Each plaintiff claims he is entitled to an additional 20% representing participation under the plan for one year more than the period allowed for by the defendant.

According to plaintiffs' interpretation of the plan, an employee becomes eligible for a 20% vested interest at the same time he becomes eligible for his first allocation. Thus, an employee would have a 100% vested interest five years after joining the company.

Defendant contends that Article VI is to be interpreted to mean that a participant is not "in the plan" until after the first allocation to his account. Thus, five years after the initial allocation, but at least six years after first joining the company, the employee would be entitled to the entire amount allocated.

Defendant further points out that the plan expressly provides that an employees committee which is set up under the plan is vested with the power to "interpret or construe this plan; to determine all questions that may arise hereunder as to the status and rights of Participants and others hereunder * * *." It is undisputed that the committee had previously given the agreement the interpretation defendant now urges.

The trial court found that defendant's interpretation of the wording of the plan was correct, but that plaintiffs were entitled to the extra 20% interests based upon representations made to them both orally and in a brochure describing the plan. The court stated that "[a]s to each of these plaintiffs, the 'profit sharing plan and trust agreement' was modified by said

representations and 'announcement' in accordance therewith, and plaintiffs acquired certain vested interests in the trust fund accordingly."

The similarity of the announcement and the complete formal plan is apparent from an examination of the following parallel provisions:

Announcement

"Any employee of Western Equipment Co. of Eugene who has completed one year of service * * * and who is not covered by a welfare plan otherwise negotiated by a collective bargaining unit is eligible to participate in this profit sharing plan and trust agreement. The trustee will maintain a separate account for each employee who becomes eligible to participate in the plan and will credit to his account a certain portion of the profits of the business paid by the company to the trustees, the annual share of each employee to be determined as follows:

For each $100.00 of compensation received by the employee eligible to participate during any fiscal year of employer, the employee shall receive what is called 'one unit' for each year of service the employee has worked for the company. He will receive a vested and nonforfeitable interest in 20% of the amount credited to his account at the end of the first year of the plan. At the end of each additional year of continuous service an additional 20% of the amount will become vested so that after five full years of continuous service the full amount credited to the employee's account shall become vested and nonforfeitable."

Plan

Article III, Paragraph 1:

"*Eligibility:* Any employee of the Company shall be eligible to become a Participant who shall, on June 30, 1959, or on any anniversary thereof, file an application with the Committee to be a Participant, or on whose behalf an application is filed by the Company, and who at the time of such application has been continuously employed by the Company for a period of twelve months or more, who is not covered by any other type of welfare plan negotiated by a collective bargaining agent.

* * * * * Article VI.

At the end of his first year in the plan, a Participant shall have vested and non-forfeitable interest in 20% of the amount credited to his account. At the end of each additional full year of continuous service, an additional 20% of the amount shall become vested, so that after five full years of continuous service the full amount credited to his account shall become vested and non-forfeitable * * *."

The announcement concludes with the statement:

> "The purpose of this announcement is to highlight the various benefits and provisions of the plan of interest to you. A complete copy of the profit sharing plan and trust agreement will be maintained in the company's office for your inspection."

It appears from the foregoing excerpts that the announcement and the plan described the company's offer in essentially the same way. We are unable to see any material difference.

This does not, of course, dispose of plaintiff's contention that the wording of both the plan and the announcement require the interpretation that the employee is entitled to a 100% vested interest at the end of five years of service with defendant company. However, this interpretation is not open to plaintiffs if they are found to rest their claim upon the plan itself because the plan expressly provided that the employees' committee was vested with the authority to interpret the plan and the committee had, in fact, interpreted it as defendants now contend.

■ A significant question is, then, whether plaintiffs had an obligation to acquaint themselves with the complete plan. If they were obligated to do so, they would then be bound by the committee's interpretation.

We have already noted the concluding paragraph in the announcement stating that its purpose was "to highlight the various benefits and provisions of the plan" and informing the employees that "[a] complete copy of the profit sharing plan and trust agreement will be maintained in the company's office for your inspection."

We think that this paragraph of the announcement

gave plaintiffs adequate warning that the announcement was not designed as the company's offer but was simply intended as information and an invitation to the employees to look at the plan itself if they were interested in participating in the profit sharing program.

*Voigt v. South Side Laundry & Dry Cleaners, Inc.*, 24 Wis2d 114, 128 NW2d 411 (1964) deals with a comparable problem. In that case, the defendant distributed to the plaintiff and other employees an outline of defendant's retirement income plan. The outline stated, in effect, that an employee would be entitled to retirement benefits after ten years of continuous service. The outline purported to summarize a retirement income plan contained in a group annuity contract between the company and an insurance carrier. The contract itself was not introduced into evidence, but it appears that the contract contained a qualification that an employee must have completed ten years of employment subsequent to January 1, 1958 or have reached the age of 65, whichever is the later date, in order to be entitled to retirement income.

The concluding paragraph of the outline read as follows:

"Of course this is only a brief outline of the Retirement Income Plan. The Plan will be governed entirely by the terms of the Group Annuity Contract between the Company and the Prudential." 128 NW2d at 413.

There was testimony that the president of the company, in explaining the plan to the employees, had made representations as to the employees' entitlement which differed from that provided for in the contract. The court said that the provisions of the contract

"would govern over any conflicting provision contained in the outline." Further, the court said: "Inasmuch as plaintiff's cause of action is based on a written contract and not estoppel, we consider any verbal explanation of the plan made by defendant's officers to be immaterial." 128 NW2d at 413.

Although in *Voigt* the outline or announcement (unlike the announcement in the present case) explicitly stated that the formal written contract or plan was controlling, we do not think that there is a material distinction between the message which was conveyed by the concluding paragraphs in the two cases. In the present case the announcement gave the employees ample notice that the plan contained the "complete" profit sharing program and that it was available for the employees' inspection. This was enough to warn the employees that the company regarded the formal written plan as the controlling instrument.

That instrument, as construed by the employees committee pursuant to the terms of the plan, confers on plaintiffs no greater benefits than those the defendant company has made available to them.

The judgment of the trial court is reversed.

TONGUE, J., concurs in the result.