**Victor G. MILLER, Plaintiff,**

**v.**

**DICTAPHONE CORPORATION, a New York corporation, Defendant.**

**Civ. No. 71–75.**

United States District Court,
D. Oregon.

Nov. 22, 1971.

Arden E. Shenker, Rees C. Johnson, Tooze, Powers, Kerr, Tooze & Peterson, Portland, Or., for plaintiff.

John P. Bledsoe, McColloch, Dezendorf, Spears & Lubersky, Portland, Or., for defendant.

OPINION

ALFRED T. GOODWIN, District Judge:

Cross motions for summary judgment on agreed facts require the court to construe an employee pension plan and declare the rights of the parties.

Victor G. Miller, an Oregon resident, was employed by Dictaphone Corporation, a New York corporation, from 1934

to 1969. He retired, and a dispute arose concerning the dollar amount of his pension. The amount in controversy satisfies 28 U.S.C. § 1332.

■ On December 13, 1966, Dictaphone announced, by letter, changes in an existing pension plan under which Miller was already enrolled. Miller did not actually read the letter, but a fellow employee told him about it and suggested he send in the necessary enrollment card to take advantage of the announced change. He did so. The announcement read in material part as follows:

> "C. *Addition of New Minimum Benefit Provision*
>
> Plan members retiring in the future will qualify for an annual minimum benefit, inclusive of the employee's expected Social Security benefit, equal to 37½% *of the average of his annual earnings (as defined in the plan) for the five consecutive years* immediately preceding his retirement or termination date providing the employee has reached age 62 and has at least thirty years of credited service with Dictaphone Corporation . . ."

On June 22, 1967, Miller wrote Dictaphone requesting a copy of the December 1966 announcement. Miller was then 60 years of age. During the next two years Miller made frequent requests for additional information. He was told that if he chose to retire at age 62, he would receive the minimum benefits set forth in the quoted paragraph less reductions made to satisfy certain actuarial requirements suggested by the Internal Revenue Service. After Miller had enrolled in the plan, Dictaphone modified it to provide reductions in benefits of one-half of one per cent for each month of retirement prior to a retiree's 65th birthday. Miller protested these reductions, but nonetheless retired at age 62. The actuarial deductions were then subtracted from his retirement payments, and he sued.

Dictaphone contends that the 1966 letter was not an offer, and that Miller knew long before he retired that the plan included the actuarial reductions he now challenges. Dictaphone contends that Miller's retirement with full knowledge of the revised terms of the plan constituted his consent to the revisions.

The 1966 announcement letter was the only published document in which Dictaphone ever stated that an employee would receive a full minimum benefit—without any deductions, actuarial or otherwise—if he retired at age 62 after 30 years of accredited service. Dictaphone argues that this announcement was not an offer, but that the plan itself (a booklet called Dictaphone Pension Program Plan G) was the offer.

Plan G, however, was not circulated generally among employees. When the 1966 letter was being circulated, Plan G was in tentative form. On March 13, 1969, two years after the enrollment date had passed, plaintiff received a booklet explaining Pension Plan G. This booklet, as well as various letters from a Dictaphone representative, informed the plaintiff that actuarial deductions would be made if an employee retired earlier than age 65, but these communications were not circulated prior to the enrollment date.

By the time he retired, Miller admittedly knew all the details of the plan's actuarial reductions in his pension payments. It does not follow, however, that Miller consented to these reductions. The record shows that he did not.

While Dictaphone did not consider itself bound by the terms of the 1966 letter, that letter nonetheless was an offer by Dictaphone. When accepted, the offer became a unilateral contract. See, e. g., Neuffer v. Bakery & Confectionery Workers Int. Union, 113 U.S.App.D.C. 334, 307 F.2d 671 (1962); Chinn v. China National Aviation Corp., 138 Cal. App.2d 98, 291 P.2d 91 (1955); Jacoby v. Grays Harbor Chair & Mfg. Co., 77 Wash.2d 911, 468 P.2d 666 (1970).

The 1966 offer was accepted by performance, not by retirement. The first

stage of this performance was the signing of the enrollment card. Next, an employee had to be qualified (by 30 years of Dictaphone employment) before his retirement. Finally, performance for early-retirement-benefit purposes was terminated by retirement after age 62 but prior to age 65.

Once an employee began to perform under the terms of the 1966 letter, Dictaphone was bound to the terms of that letter—irrespective of Dictaphone's subsequent efforts to inform its employees of modifications which made the plan actuarially sound but less attractive to the employees.

In Gould v. Continental Coffee Co., 304 F.Supp. 1, 3 (S.D.N.Y.1969), a pension plan called for a forfeiture of an employee's benefits if the employee should go to work for a competitor within four months after leaving the employer. The summary of the plan furnished to the employees, however, did not make the terms of this forfeiture clear. The court held that the summary controlled over the plan itself.

In Fields v. Western Equipment Co. of Eugene, 255 Or. 615, 469 P.2d 779 (1970), the retirement-plan announcement letter did not bind the corporation which issued it, but that announcement made it clear that the plan itself, and not the announcement, constituted the offer. In *Fields,* the letter concluded:

> " 'The purpose of this announcement is to highlight the various benefits and provisions of the plan of interest to you. A complete copy of the profit sharing plan and trust agreement will be maintained in the company's office for your inspection.' " 255 Or. at 620, 469 P.2d at 782.

Dictaphone's 1966 letter and enclosed summary of the plan contained no warning or qualifying language. Nothing in those documents urged employees to consult the actual plan before sending in the enrollment card. The letter was circulated about two weeks before the enrollment cards were due. Even if employees could consult and understand Plan G prior to making their initial commitment through enrollment, Dictaphone made no effort to call the changes to their attention. The tentative plan did recite that some changes might be made to conform to tax requirements, but Miller and his fellow employees had no way of knowing, when they were being urged to enroll and to authorize payroll deductions, that the promises of the 1966 letter were subject to change. Dictaphone should not now be permitted to argue that the letter was not an offer. I am satisfied that it was an offer.

Corbin explains that a pension offer is not enforceable when made, but is enforceable once the employee begins to perform (normally by continuing to work for the defendant corporation):

> " * * * [T]he employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting, and this is true in spite of the fact that the employee may be privileged to quit service at any time." 1A Corbin, Contracts § 153, at 19–20 (1963).

An offer for a unilateral contract may not be revoked after substantial performance has taken place. See, *e. g.,* Harding v. Rock, 60 Wash.2d 292, 373 P.2d 784 (1962); Chinn v. China National Aviation Corp., *supra;* 1A Corbin, Contracts § 153, quoted *supra;* 1 Corbin, Contracts §§ 49, 63 (1963). The American Law Institute has adopted a similar, and perhaps even broader rule. Restatement of Contracts § 45.

Even though Miller may not have been fully aware of the precise terms of the 1966 offer, the fact that he was aware of the 1966 announcement's existence, when coupled with his seven months of performance (enrollment and continued service from January to July, 1967) made that offer irrevocable, thus enabling Miller to continue his performance until he had fully satisfied the conditions of the 1966 letter. See Hunter v. Sparling, 87 Cal.App.2d 711, 197 P.2d 807 (1948); 1 Corbin, Contracts § 60

(1963). Since Miller has now fully performed, he is entitled to the minimum benefits outlined in the 1966 letter without the actuarial reductions later added to the plan.