Argued February 7, affirmed September 11, petition for
rehearing allowed November 26, 1974, appeal dismissed
January 21, 1975

# SPITZNASS, *Appellant, v.* FIRST NATIONAL BANK OF OREGON, *Respondent.*

525 P2d 1318

*Elden M. Rosenthal,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Wilson & Atchison, Portland.

*Louis B. Livingston,* Portland, argued the cause for respondent. With him on the brief were R. Alan Wight, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

BRYSON, J.

Plaintiff, a retired employe of Georgia-Pacific Corporation, brought this proceeding to recover additional retirement benefits under the Georgia-Pacific and Lumber and Sawmill Workers Pension Trust and Retirement Plan (the "Plan"). Defendant is the trustee of the Plan.

Plaintiff retired in October, 1971, at the mandatory retirement age of 65 years and received a pension based on his "current service credit" which was computed on his employment as an hourly employe from February 13, 1961. This retirement benefit is not disputed.

But plaintiff's complaint contends he is also entitled under the Plan to an additional $45 per month for "past service credit" computed at "$3.00 [per month] * * * for Each Year [15] of Credited Past Service." However, the defendant contends that plaintiff was a salaried employe, not an hourly employe, on the effective date of the Plan, June 1, 1960, and therefore plaintiff is excluded from receiving "past service credit" under the terms of the Plan.

At the close of plaintiff's case the court dismissed the jury stating, "I think I am required as a matter of law to rule that there is no issue to be decided by the jury. * * * I feel that I am bound by the case of Fields against Western Equipment Company [255 Or 615, 469 P2d 779 (1970)]," and subsequently entered an order:

"* * * [T]he court having verbally dismissed the jury, and wishing to enter a formal order to that effect, it is hereby

"ORDERED that the jury be and is dismissed, upon the ground and for the reason that the court considers that the issues involved in the case to be issues for the court sitting without a jury."

Plaintiff contends the jury should not have been dismissed. Plaintiff's complaint asked for damages in the amount of $45 per month but to resolve that matter the court has to decide if the defendant trustee has breached its duties in the administration of the trust which controls the funds paid into the Plan for union member retirement benefits.

1 Restatement of Trusts (Second) § 197 provides:

"§ 197. Nature of Remedies of Beneficiary
"Except as stated in § 198, the remedies of the beneficiary against the trustee are exclusively equitable.

"Comment:
"* * * * *.

"*b. Breach of contract.* A trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract in the common-law actions of special assumpsit or covenant or in a similar action at law in States in which the common-law forms of action have been abolished. The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather

than as a contract. Moreover, questions of the administration of trusts have always been regarded as of a kind which can adequately be dealt with in a suit in equity rather than in an action at law, where questions of fact would be determined by a jury and not by the court. The mere fact that there may happen to be a promise in words by the trustee to perform the trust does not give the common-law courts concurrent jurisdiction over the administration of the trust.

"The trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforeable in an action at law. * * *.

"* * * * *."

■ We held, in *Fleishman v. Krause,* 261 Or 505, 508, 495 P2d 268 (1972), that when a trustee is under a duty to pay money immediately or unconditionally to the beneficiary, the beneficiary can maintain an action at law to enforce payment, citing cases and 1 Restatement Trusts 522, § 198 (1). In the case at bar there was no immediate or unconditional duty on the part of the defendant to pay the claimed amount from the trust funds. It involved a matter of trust administration and interpretation of the Plan and the "booklet" describing the Plan. Accordingly, we hold that the court did not err in dismissing the jury.

The Plan was adopted and executed by negotiations between the Union and Georgia-Pacific, and the material provisions of the Plan which was received in evidence provide as follows:

## "ARTICLE I

"* * * * *.

" '*Credited Past Service*'—Years of employment * * * up to a maximum of 16 * * *.

"* * * * *.

Past service will only be credited to employees who become covered by the Plan on June 1, 1960, * * *."

The Plan defines an employee as follows:

" '*Employee*'—A nonsalaried employee of an employer who may participate in the Plan pursuant to Article II.

"* * * * *.

## "ARTICLE II

## "PARTICIPATION IN AND EXCLUSION FROM THE PLAN

"The following employees may participate in the Plan provided the amounts of the required contributions are received by the Trustee on their behalf:

"(A) Employees of companies working under a collective bargaining agreement with unions.

"(B) Employees of an employer working under a collective bargaining agreement with a local union.

"* * * * *.

"Participation in the Plan commences with the date of the first contribution on behalf of an employee by his employer.

"* * * * *.

## "ARTICLE III

## "GENERAL PROVISIONS

"* * * * *.

"* * * Said benefits are to be paid solely from the Trust Fund. The sole liability of Company and Union hereunder is to appoint the required members of the Joint Committee and their alternates. The obligation to the Plan and Trust, if any, of the respective employers arises exclusively from the bargaining agreement between such employer and the local union party to said agreement.

"* * * * *.

"(g) The authority, duties and obligations of the Trustee shall be governed solely by the terms of the Trust Agreement. * * * [T]he Trustee's obligations and responsibilities shall be limited to those of an agent or custodian governed at all times by the determination of the Joint Committee * * *.

## "ARTICLE XVI
## "THE JOINT COMMITTEE—MEMBERSHIP

"The Fund and Plan shall be administered by a Joint Committee composed of six members. Three members of the Joint Committee, sometimes referred to as 'employer members,' shall be designated by Company, and three members, sometimes referred to as 'union members,' shall be designated by Union. * * *

"* * * * *.

"(B) All appointments, revocations, removals, replacements, authorizations and resignations of Committee members and alternates shall be made in writing and filed at the principal office of the Trust and with the Trustee, and all persons, firms and corporations, including the Trustee, may conclusively rely thereon as evidence of the authority of said members.

## "ARTICLE XIX
## "THE JOINT COMMITTEE—POWERS

"* * * The Joint Committee's powers shall include, but not be limited to, the power and authority to:

"* * * * *.

"(H) Determine the eligibility of and amount of benefits due any employee * * * and instruct the Trustee to pay benefits in the amounts and to the persons it shall designate."

After the Plan was executed by the Union and

Georgia-Pacific they published and distributed to employes a booklet which included the following letter:

"Dear Member and Employee:

"Here is a brief description of your new Retirement Plan. It is the result of collective bargaining and is established jointly by the Employers and the Unions. Months of careful planning have produced an actuarially sound plan which will add to the security of your retirement.

"\* \* \* \* \*.

"There are an equal number of Employer and Union representatives on the Joint Committee, which is responsible for developing and administering the Pension Trust and Retirement Plan. The First National Bank of Oregon, Portland, is the Trustee and receives and disburses all of the funds.

"The purpose of this booklet is to explain to you the main features of the Retirement Plan. *The 'Trust Agreement' and 'Retirement Plan' contain the exact provisions of the Plan and shall control in case of any discrepancy between them and this booklet.*

"\* \* \* \* \*.

"This is your Plan. To secure the maximum benefits from the Plan, study this booklet carefully. If you have any questions about the Plan after studying the booklet, call or write to the Administrative Office at the First National Bank of Oregon, Portland, Trust Department \* \* \*." (Emphasis supplied.)

Concerning "Credited Past Service," the booklet states:

"You are eligible for past service credit provided you were on the payroll of an employer contributing to the Pension Fund on June 1, 1960 \* \* \*.

"Past service credits will be given up to a maximum of 15 years on the basis of the number of continuous years you have been a member of the

union or employed in the lumber, plywood, logging, and wood fibre industry in the 11 western states and Alaska as certified by employers or by the union. The burden of supplying evidence of such employment satisfactory to the Joint Committee shall rest upon the employee. * * *"

The plaintiff's complaint sets forth the above language from the booklet and alleges:

### "VI

"Plaintiff requested the Trustee to recompute his retirement benefits so as to reflect 15 years of credited past service. Plaintiff made said request on the basis of the explanation of the retirement plan contained in the pamphlet referred to in paragraph V above, and on the basis of periodic statements received by him from the Trust Fund which indicated 15 years of credited past service accrued. Defendant trustee has refused to recompute said benefits."

Plaintiff was the only witness called to testify. The record is silent as to whether or not he was a member of the Union prior to February, 1961. He testified that he had started to work for Coos Bay Lumber Company in 1934 as a bridge carpenter, train brakeman, and road builder and became a road superintendent on a monthly salary. He testified:

"There's a little mistake in the time I went on by the month. After looking up records, it was in '53 instead of '54, around June, I believe, and I was road superintendent at that time; and the reason for going on by the month is because I had the construction at Sixes camp also, besides Eden Ridge, so I worked by the month until G-P bought them out in '56. * * *"

Plaintiff continued to work for Georgia-Pacific as a salaried employe "until the end of October of 1960." At that time Georgia-Pacific consolidated their road

construction camps and placed plaintiff on a "lay-off basis until they needed me." Plaintiff returned to work for Georgia-Pacific as an hourly employe in February, 1961. He testified:

> "Q Now, before you went back to work there in '61, did you know about the retirement plan?
>
> "A Yes, sir. Well, when I first was approached about the bridge foreman job, my next door neighbor was a bridge foreman and he had one of these books."

The plaintiff received semiannual form statements that showed his standing for retirement benefits under the Plan. From 1961 to 1968 his statements showed he had no "credited past service." He stated that although he received the statements every six months he "didn't think anything about it." He talked to fellow employes regarding what credits they had in the fund. He testified:

> "* * * So, the next one I got, or maybe I went home and looked at one of the old ones, and mine said nothing."

He then wrote to Mr. Peters, the head timekeeper for Georgia-Pacific, who "sent the records up to them." Thereafter, from 1968, his semiannual statements showed he had 15 years' past service credit. He testified:

> "Q Then what did you think?
>
> "A I thought everything was settled."

At retirement he received a pension which did not include the $45 per month for "credited past service."

The plaintiff contends that "where pension plans, or insurance plans, issue booklets or pamphlets describing the terms of their policies, the issuers of such booklets are bound by the terms of these booklets."

Initially we must decide which is the controlling instrument that determines the plaintiff's rights to benefits, the brochure or the Plan. In *Fields v. Western Equipment Co.,* 255 Or 615, 469 P2d 779 (1970), the plaintiffs' contention that a profit sharing plan should be construed according to the terms of a written announcement describing the plan was rejected. The court stated, at pages 620-21 and 622:

"We think that this paragraph of the announcement gave plaintiffs adequate warning that the announcement was not designed as the company's offer but was simply intended as information and an invitation to the employees to look at the plan itself if they were interested in participating in the profit sharing program.

"* * * * *.

"* * * [T]he announcement gave the employees ample notice that the plan contained the 'complete' profit sharing program and that it was available for the employees' inspection. This was enough to warn the employees that the company regarded the formal written plan as the controlling instrument."

In *Omdahl v. Omark Industries,* 259 Or 496, 486 P2d 1271 (1971), plaintiff sought to recover damages for a breach of a stock option, claiming interpretation of the stock option agreement based on a letter he received from defendant notifying him "that he had been granted a stock option" and language in the prospectuses filed. We held that neither the letter nor the prospectuses were controlling because "[t]he letter expressly recites that the stock option 'is in all respects limited and conditioned as provided in the * * * Plan' * * *" and that "[t]hese references to the Plan were sufficient notice to plaintiff that the rights of the parties were governed by the terms of the Plan

itself and not by any descriptive statements in the letter or prospectus." 259 Or at 501, 502.

In the case at bar, the letter on the first page of the booklet advised plaintiff that the booklet was a "brief description" of the Plan; that the " 'Trust Agreement' and 'Retirement Plan' contain the exact provisions of the Plan and shall control in case of any discrepancy between them and this booklet." This quoted language is almost identical to the language of the retirement income plan in *Voigt v. South Side Laundry & Dry Cleaners, Inc.,* 24 Wis 2d 114, 128 NW2d 411 (1964), quoted with approval in *Fields v. Western Equipment Co., supra.*

■ We conclude that the Plan is the controlling instrument and the language in the letter as it appeared in the booklet gave plaintiff adequate notice that the rights of the parties were controlled by the Plan.

■ Plaintiff filed an amended reply contending that "defendant is estopped from asserting as a defense to plaintiff's demand any terms contained in" the Plan which would deny plaintiff credit for past service. Plaintiff contends that the "elements of estoppel have been—proven."

As far as the pamphlet is concerned, the statement as to past service credit cannot be the basis of an estoppel because of the statement in the pamphlet that if there was any difference between the pamphlet and the Plan, the Plan governed. As previously indicated, our past cases would not permit reliance upon the pamphlet under such circumstances.

■ Neither do we believe the semiannual statements showing that plaintiff was entitled to past service credit, which he commenced receiving in 1968, could be the basis for an estoppel because there was no

evidence that the trustee was responsible for their preparation and delivery to plaintiff. Had there been such evidence plaintiff might have had a remedy on the theory of implied contract or promissory estoppel.

■■ A promise may be implied, as well as express, and a statement of account may be considered as an implied promise that the amount stated is due and payable, at least under some circumstances. See Restatement of Contracts § 5 (1932); 1 Corbin on Contracts 29, § 13 (1963); Annot., 48 ALR2d 1069, 1074 (1956); *Caldwell et ux v. Wells,* 228 'Or 389, 394, 365 P2d 505 (1961); *Meridianal Co. v. Moeck,* 121 Or 133, 138, 253 P 525 (1927). In such an event, continued employment might provide sufficient consideration for such an implied promise to pay a pension to an employe or for the purposes of promissory estoppel, even though not proven to have been in reliance upon it. See Annot., 48 ALR2d 1069, 1085 (1960); 42 ALR2d 461, 467 (1955). Cf. *McHorse v. Portland General Electric,* 268 Or 323, 331, 521 P2d 315 (1974); *Taylor v. Mult. Dep. Sher. Ret. Bd.,* 265 Or 445, 510 P2d 339 (1973); and *Lyden v. Goldberg,* 260 Or 301, 490 P2d 181 (1971).

■ In this case, however, it appears from the evidence that when in 1968 plaintiff became concerned over this matter he took the matter up with the head timekeeper of his employer, after which he "began to receive" every six months the written statements upon which he now relies, either from "the company or the trust fund," and either "in the mail" or "at the office." From all that appears from the record, these statements may have been prepared and delivered to plaintiff by his employer. In such an event, defendant would have no responsibility for such statements, whatever

may be the responsibility of plaintiff's employer. *Gediman v. Anheuser Busch, Inc.,* 299 F2d 537 (2d Cir 1962).

Affirmed.

TONGUE, J., specially concurring.

I concur in the result reached by the majority, but not in all of the reasoning adopted by it.

If there had been evidence that defendant had been responsible not only for the issuance of the booklet, but also for its delivery to plaintiff "in the normal course of his employment," as alleged in plaintiff's complaint, and that plaintiff was covered by the plan according to statements appearing in the booklet, I would not be as certain as the majority appears to be that the plaintiff would have no remedy, either in an action at law or in a suit in equity, upon a theory of either promissory or equitable estoppel.

In this case, however, it appears from the evidence that this booklet was not delivered by defendant to plaintiff "in the normal course of his employment," but that he learned of the booklet from a neighbor who was also an employe. It also appears, as previously stated, that on June 1, 1960, plaintiff was a salaried employe—a road superintendent or road foreman—and it does not appear whether or not he was a union member as of June 1, 1960. Under these circumstances, plaintiff cannot properly charge defendant with responsibility for statements in the booklet that may have been inaccurate and misleading to him, but which were accurate and not misleading to the nonsalaried union members covered by provisions of the plan.

For these reasons I concur in the result of the opinion by the majority.