Stephen ANTHONY

v.

**RYDER TRUCK LINES, INC., a corporation, and Byrns Motor Express, a Division of Ryder Truck Lines, Inc., and Lawrence E. Smith, Helen E. Smith, Robert F. Dermady and Alex Miller, Trustees, W. T. Byrns Motor Express, Inc., Pension Trust Fund.**

**Civ. A. No. 76–3406.**

United States District Court,
E. D. Pennsylvania.

Feb. 28, 1979.

---

Dona S. Kahn, Philadelphia, Pa., for plaintiff.

Jan E. Dubois, Philadelphia, Pa., J. P. Jones, Jacksonville, Fla., for Ryder and Byrns.

Tom P. Monteverde, Philadelphia, Pa., for individual defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court are the motions of plaintiff Stephen Anthony ("Anthony") and of defendants Ryder Truck Lines, Inc. ("Ryder"), Byrns Motor Express ("Byrns") and the trustees of the W. T. Byrns Motor Express, Inc., Pension Trust Fund ("trustees") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The jurisdiction of this Court is based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs. For the reasons stated below, Anthony's motion will be denied and the motions of all of the defendants will be granted.

The record in this case reveals the following uncontroverted facts: In April of 1952, Anthony was hired as a salesman for Byrns. In 1959, Byrns instituted a voluntary pension plan for the benefit of its employees, including Anthony. All of the contributions to the pension fund were made by Byrns and not by the employees. The 1959 pension plan was subsequently disqualified by the Internal Revenue Service and a qualifying successor plan was adopted by Byrns in 1962. After the 1962 pension plan was adopted, Anthony and all other subscribing employees received a letter dated March 1, 1963, from Lawrence Smith ("Smith"), then a trustee of the Byrns Pension Trust Fund. This letter informed the employees of the dissolution of the 1959 pension plan and the formation of the 1962 pension plan. Attached to the letter was a release form which, when properly executed, would release the trustees of the Byrns Pension Trust Fund from all liability with regard to the termination of the 1959 pension plan. In addition, the executed releases would enable the trustees to transfer the assets in the 1959 pension plan fund into the new 1962 pension plan fund. Anthony executed this release and returned it to Byrns without making any inquiries. The trustee's letter made no reference to the topic of "credited service years," the figure which is used to determine an employee's benefits under the pension plan.[1]

In 1970, Ryder acquired Byrns. Later, in September of that same year, Ryder mailed letters to all former Byrns employees, then employed by Ryder, informing them that the 1962 Byrns pension plan ("Byrns plan") would be incorporated into the existing Ryder pension plan ("Ryder plan"). This letter did make specific reference to the employee's credited service allowance under the Ryder plan.[2] In addition, at the bottom of the same letter were columns listing information concerning the specific addressee's birthdate; credited service as of December 31, 1969; annual benefits earned through December 31, 1969; cash value as of December, 1969; and, annual insurance premiums. The letter to Anthony had the date 1952 typed into the column entitled

---

1. Smith's letter did contain the following pertinent language:

   The new plan will provide the same benefits as the old and your monthly pension at retirement will not be effected [*sic*] by the action now being taken. Future contributions by the Company will be in an increased amount to fund the benefits over the shorter period of time.

2. The Ryder letter stated, in pertinent part:

   Please note however, that your participation under the Ryder plan commences on January 1, 1970, and your annual benefit and credited service earned through December 31, 1969, is based upon your participation under the Byrns plan, if any. If your employment terminates for any reason you will receive no less than you would have received under the terms of the Byrns plan if your employment had terminated on January 1, 1970.

credited service. However, Byrns did not have a pension plan in 1952. Furthermore, no Byrns employee, for purposes of collecting pension benefits under the Ryder plan, has been credited with service time prior to 1962, when the second Byrns plan was effectuated. Along with the letter, Ryder sent all employees a booklet which summarized the provisions of the Ryder plan. The introduction of the summary booklet contained the following language:

> However, if questions arise, or in the event of any conflict between this summary and the formal text of the plan, all decisions will be based on the formal text which will be controlling in all instances.

In 1974, Marjorie Kirk ("Kirk"), Ryder's Personnel Service Manager, prepared worksheets for all of the former Byrns employees now employed by Ryder which detailed the benefits of the Ryder plan that each employee was entitled to receive. Anthony received such a personalized worksheet which listed his credited service time beginning as of October 1, 1962. A letter accompanying the worksheet stated that an employee who had any questions should contact the Personnel Department.[3] Anthony never contacted anyone at Ryder about the 1962 credited service date on his personalized worksheet nor about the fact that the worksheet incorrectly stated his birthdate. In June of 1975, Anthony was fired by Ryder for "lack of progress." At that time, Anthony was informed that he was not eligible for benefits under the Ryder plan because he did not have the requisite 15 years of credited service with the company.[4]

Anthony did, however, receive a check from Ryder for $6,510.82, which represented his interest under the 1962 Byrns plan and which was payable to him in a lump sum by virtue of Article IX of the plan, as incorporated into the Ryder plan.

Count one of Anthony's complaint alleges that Ryder discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act of 1967, *as amended,* 29 U.S.C. § 621 *et seq.,* by terminating him in June of 1975. In accordance with a stipulation agreement filed February 13, 1978, Anthony's age discrimination claim was dismissed with prejudice. In count two, Anthony alleges that in 1962 the trustees of the Byrns pension fund breached their fiduciary duty to him and that, as a result of this breach, he was denied his pension benefits under the Ryder plan. Anthony contends that the trustees breached their duty in 1962 by "misleading" him into believing that his "rights" under the 1959 pension plan would not be forfeited under the 1962 pension plan when, in fact, he was not credited with service years from 1959 to 1962. Count three alleges that Ryder and Byrns denied Anthony pension benefits under the Ryder plan, in violation of the provisions contained therein. More specifically, Anthony makes the following arguments in support of his motion for summary judgment: First, "as a matter of contract interpretation," the Ryder plan should be construed to include all prior pension plans of Byrns—namely, the 1959 and the 1962 plans—thereby giving him his needed 15 years of credited service. In

---

**3.** The Kirk letter stated, in pertinent part:

We do want you to fully understand your entitlements, so please review the summary very carefully. Do contact the Personnel Department if you have any questions or desire specific information relating to your benefits.

**4.** Anthony would only be entitled to benefits from Ryder if he complied with Section 4.1, "Termination of Employment," of the Ryder plan, which provided that:

If an employee's employment terminates other than by death or retirement after he has attained his forty-fifth (45) birthday, and has completed at least fifteen (15) years of Credited Service, he shall be entitled to receive a benefit commencing at his Normal Retire-

ment Date determined in accordance with Section 3.1 or 3.3 whichever is applicable based on his Average Final Salary and Credited Service prior to the date his employment terminates.

As of January, 1970, Anthony had 7 years and 3 months of credited service under the 1962 Byrns plan which was recognized under Section 11.5 of the Ryder plan. As of June 20, 1975, the date he was terminated at Ryder, Anthony had acquired 5 years and 5 months of credited service under the Ryder plan itself. Accordingly, since Anthony had only a total of 12 years and 8 months of credited service, he was not entitled to receive benefits under the Ryder plan.

support of this contract theory, Anthony argues that the Ryder plan, on its face, includes both Byrns plans. In the alternative, Anthony proposes that the terms of the Ryder plan are ambiguous and should, therefore, be interpreted against the drafter and in favor of the beneficiary. Second, Anthony argues that the defendants should be estopped to deny Anthony credited service back to 1952. Anthony bases his argument of estoppel on two grounds: (1) that the trustees breached their fiduciary duty to him by inducing him to release his rights under the 1959 plan and by failing to then credit him with the three work years between 1959 and 1962; and, (2) that the trustee's letter of 1963, Ryder's letter of 1970 and the summary booklet of the Ryder plan misled Anthony into believing that he had credited service years, for the purpose of recovering pension benefits, back to the inception of the 1959 pension plan and that, therefore, the defendants are now estopped to deny him the time worked between 1959 and 1962 as credited service years.

The trustees contend that Anthony is not entitled to any retirement benefits under the Ryder plan "as a matter of contract interpretation," since Anthony did not have 15 years of credited service as defined in the Ryder plan. Also, the trustees contend that Anthony, by his own testimony, was not misled by, and did not rely on, any representations made by the trustees as to the number of years of credited service which Anthony was entitled to under the Ryder plan, since the only communication from the trustees to Anthony was the Smith letter in 1963 which did not mention the phrase "credited service years." Ryder and Byrns also filed motions for summary judgment against Anthony. Both Ryder and Byrns claim that none of the communications relied on by Anthony—*i. e.*, the 1963 Smith letter, the 1970 Ryder letter and the summary booklet—contradict the terms of the Ryder plan as set forth in the Master

Plan on file at Ryder's main office. In any event, Anthony was informed in the introduction to the summary booklet that the Master Plan would control in case any inconsistencies were found. In response to Anthony's estoppel argument, Ryder and Byrns contend that it is clear from the undisputed facts of the case that Anthony did not rely to his detriment on the aforementioned communications.

■■■ To prevail upon a motion for summary judgment,[5] the moving party must conclusively demonstrate to the Court's satisfaction that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Barron v. Honeywell, Inc., Micro Switch Div.,* 69 F.R.D. 390, 391 (E.D.Pa.1975). In ruling upon a motion for summary judgment, the Court must liberally construe the pleadings in favor of the party opposing the motion, and give the opposing party the benefit of any and all reasonable doubts and inferences in determining whether a genuine factual issue exists which should be preserved for trial. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 n. 15, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barron v. Honeywell, Inc., Micro Switch Div., supra,* 69 F.R.D. at 391–392. The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 159–160, 90 S.Ct. 1598; *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 848 (3d Cir. 1974). Until the movant has met this burden, his opponent is under no obligation to present any contradictory evidence to the Court. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 159–161, 90 S.Ct. 1598; *Gray v. Greyhound Lines, East,* 178 U.S.App.D.C. 91, 96, 545 F.2d 169, 174 (1976). Once the proponent has met his burden of showing that no material issue of fact exists, the opponent may not rest upon the mere alle-

---

5. Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

gations of his pleadings but must set forth countervailing evidence which demonstrates that there is a genuine issue for trial. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 160 n. 22, 90 S.Ct. 1598; *Gray v. Greyhound Lines, East, supra,* 178 U.S.App.D.C. at 96, 545 F.2d at 174. Applying these standards to the facts of the case before us, we hold that Ryder, Byrns and the trustees have sustained their burden of demonstrating that there is no genuine issue of any material fact; that Anthony has failed to submit any countervailing evidence to demonstrate that there is a genuine issue as to any material fact; and, that Ryder, Byrns and the trustees are entitled to a judgment in their favor as a matter of law. In addition, we hold that Anthony has sustained his burden of demonstrating that there is no issue of material fact; that the defendants have failed to submit any countervailing evidence to demonstrate that there is an issue of material fact; but, that Anthony is not entitled to a judgment in his favor as a matter of law.

■ First, we find that Anthony is not entitled to receive any additional benefits from Ryder on either a theory of contract or estoppel. The nature of the relationship between Anthony and the defendants is a contractual one and is defined by the provisions of the Ryder plan insofar as Anthony's benefits are concerned. Under § 4.1 of the plan, Anthony must possess at least 15 years of credited service and be at least 45 years old before he is eligible to receive a pension. Although Anthony does satisfy the age requirement, he does not fulfill the service requirement and is, therefore, not entitled to pension benefits from Ryder. Furthermore, no other provision of the plan can be construed in such a manner as to assist Anthony in maintaining his eligibility under § 4.1. For example, § 11.5 of the plan provides that Anthony is entitled to those credited service years which he amassed under the 1962 Byrns plan. However, according to the 1962 Byrns plan, Anthony's credited service years with Byrns do not begin to run until October of 1962 because there are no tacking provisions which bring into the plan the years worked prior

to 1962. Thus, even counting his credited service years under the Byrns plan and adding those years to his years of service with Ryder, Anthony has a total of 12 years and 8 months of credited service with Byrns and Ryder and is, therefore, not eligible to receive a pension from Ryder.

■ Furthermore, we find that the Smith letter dated 1963 and the Ryder letter dated 1970 are not inconsistent with the plan and do not entitle Anthony to a pension as a matter of contract law. The former did not mention the phrase "credited service years," and the latter served only as a notice to all former Byrns employees now employed by Ryder that they would not lose any benefits as a result of the takeover of Byrns by Ryder. Although the Ryder letter did state that Anthony's credited service time dated from 1952, Anthony has acknowledged that he knew that Byrns did not have a pension plan prior to 1959. In fact, in 1974, Anthony received a letter from Ryder's Personnel Manager which stated that his credited service time began on October 1, 1962. There is nothing in these communications that changes the fact that Anthony does not possess 15 years of credited service; nor do these letters contradict or change the terms of the plan. *Foley v. Devaney,* 528 F.2d 888 (3d Cir. 1976). Even assuming *arguendo* that the communications and the Ryder plan are inconsistent, a reasonable person of ordinary care and intelligence in Anthony's position would or should have understood that the trustees and the company did not intend, by their letters, to alter or change the plan. *Gallo v. Howard Stores Corp.,* 145 F.Supp. 909, 912 (E.D.Pa.1956), *aff'd,* 250 F.2d 37 (3d Cir. 1957).

■ The issue of whether the provisions of the Ryder plan or the summary booklet controls the delineation of Anthony's rights presents a slightly different problem from that raised above. Initially, we must determine which is the controlling instrument, the plan or the booklet. *Spitznass v. First National Bank of Oregon,* 269 Or. 676, 525 P.2d 1318, 1323 (1974). When, as here, the

booklet itself expressly states that it is simply a brief description or outline of the plan, it cannot be said to control the provisions of the plan. *Voigt v. South Side Laundry and Dry Cleaners, Inc.,* 24 Wis.2d 114, 128 N.W.2d 411 (1964). The introduction of the summary booklet gave Anthony adequate warning that the pamphlet was not designed to supersede the plan but was intended as information and an invitation to all employees to examine the plan itself if they desired more information or had any questions. *Fields v. Western Equipment Co.,* 255 Or. 615, 469 P.2d 779 (1970). In *Gallo v. Howard Stores Corp., supra,* the court held that an employee was precluded from asserting any rights under a description of the employer's pension plan as contained in a booklet which was distributed approximately one and one-half years after the employee had already accepted membership in the plan. The court stated that any reasonable person would be advised upon reading the booklet and the accompanying letter that these papers purported to be an explanation of the existing plan and not an announcement of a change. There is no question but that Anthony must look to the plan in order to establish his claim to additional retirement benefits and that, under the terms of the plan, Anthony is not entitled to additional benefits from Ryder. Accordingly, Anthony's claim for additional benefits from Ryder based on a theory of contract interpretation must fail.

■ Anthony's claims based upon a theory of estoppel are equally without merit. As the court noted in *In Re: Flying W Airways, Inc.,* 341 F.Supp. 26 (E.D.Pa.1972):

> The doctrine of promissory estoppel holds that: (1) a promise (2) which the promisor should reasonably expect to induce (3) action or forebearance of a definite and substantial character (4) on the part of the promisee (5) and which does induce such action or forebearance, is binding (6) if injustice can be avoided only by enforcement of the promise.

*Id.,* at 74. The essential element of estoppel is a misrepresentation by one party which induces a reasonable and justifiable reliance on the part of another party. *Blofsen v. Cutaiar,* 333 A.2d 841 (Pa.1975). First, taking Anthony's testimony at face value, and even resolving all questions of credibility in his favor, it is clear that the trustees made no misrepresentation of any kind to Anthony. The only direct communication between the trustees and Anthony was the Smith letter which failed to address the issue of credited service years and which cannot be said to have misled Anthony as to his rights under the 1962 Byrns plan and, subsequently, the Ryder plan. According to Anthony's own testimony, he did not rely on any communication from the trustees and, therefore, cannot now claim that the trustees are estopped to award him credited service years for the time worked between 1959 and 1962.

■ Second, Anthony also contends that Ryder and Byrns are estopped to deny him pension benefits under the Ryder plan because of misrepresentations contained in the 1970 Ryder letter and the summary booklet on which he relied to his detriment. However, according to Anthony's own testimony, he knew that Byrns did not initiate a pension plan until 1959 (Anthony Deposition, p. 7). But despite this knowledge, Anthony failed to question the 1952 starting date mentioned in Ryder's letter. In addition, Anthony did not investigate this letter even though the 1974 letter from Ryder correctly listed Anthony's credited service years as beginning on October 1, 1962. These letters do not contain any material misrepresentations. However, even if there were a misrepresentation, to recover on his estoppel theory, Anthony must also prove a detrimental reliance, *Gallo v. Howard Stores Corp., supra; Blofsen v. Cutaiar, supra,* which was reasonable and justifiable, *Foley v. Devaney, supra; In R: Flying W Airways, Inc., supra.* Anthony's reliance was neither reasonable nor justifiable. First, Anthony cannot reasonably claim that the 1952 figure led him to believe that his credited service years dated back to 1959 and not to 1962. Second, the 1952 figure was corrected, as it were, by the 1974 letter and, thus, at the time of his termination, Anthony was aware that the year 1962

governed the amount of credited service time he was entitled to under the plan. Finally, no injustice will result if application of the doctrine of equitable estoppel is withheld because Anthony has already been adequately compensated by Ryder at the time of his termination.

Anthony's reliance on the summary booklet is misplaced and unreasonable. The booklet, by its own plain terms, does not purport to set forth the complete provisions of the employer's plan but rather explicitly states that in the event of a conflict the master pension plan would control. If Anthony noticed any discrepancies or had any question concerning his benefits, he had an obligation to consult the plan and cannot now claim that he relied on any misrepresentations contained in the summary booklet. The cases cited by Anthony would not permit recovery under the circumstances of this case since, in those cases, the booklet failed to announce that it was simply a summary and that the plan was still controlling, and Anthony did, in fact, change his position to his detriment in reliance on the defendants' representations, or the company initially acquiesced in the plaintiff's demands and later tried to stop or decrease the payments. *See generally Miller v. Dictaphone Corp.,* 334 F.Supp. 840 (D.C.Or. 1971); *Gould v. Continental Coffee Co.,* 304 F.Supp. 1 (S.D.N.Y.1969); *Dictaphone Corp. v. Clemons,* 488 P.2d 226 (Colo.App.1971); *Sessions v. So. Cal. Edison Co.,* 47 Cal. App.2d 611, 118 P.2d 935 (1941). Anthony was fully advised of the location of the plan and had only to read the plan or question Ryder about it to ascertain whether he was covered or not. As mentioned above, Anthony was already a member of the plan when he received the various letters and did not rely on any of these communications to join the pension plan. Accordingly, Anthony's claim for additional benefits from Ryder based on a theory of estoppel must also fail.

An appropriate Order will be entered.