## 57084. HERCULES, INC. v. ADAMS.

QUILLIAN, Presiding Judge.

This is an appeal from a grant of a motion for summary judgment to the plaintiff Adams in the trial court. Plaintiff was employed by defendant Hercules, Incorporated, on September 3, 1974. After Mr. Adams entered upon his employment he was given a booklet, entitled: "Hercules Incorporated — Brunswick Plant Handbook." The "Forward" section of the handbook contained the following: "Also, it is desirable that each employe know the benefits to which he is entitled. This booklet has been prepared to present this information to you in a form that will be readily available for reference. However, feel free to ask your Foreman or Supervisor for information about you and your job at anytime."

In Part III of the booklet, titled: "Employe Benefit Plans . . ." was the following: "In addition to earned wages, Hercules has a liberal array of benefits . . . *These less common Benefit Plans are presented here in a very brief form.* Because of the nature of some of these Plans, revisions must occasionally be made. *You may obtain the full details of all Benefit Plans from your* Foreman, Supervisor or the *Personnel Department."* (Emphasis supplied.) Thereafter, in the handbook was a "Voluntary Compensation Plan," which provided: "Hercules pays to an employe absent from work because of an injury

sustained in the course of employment, the difference between his normal wages and the amount of compensation provided by the Georgia Workmen's Compensation Law . . . The entire cost of this Plan is paid by the Company."

On September 19, 1974, plaintiff incurred a back injury. It was held to be a compensable injury by the State Board of Workers' Compensation, and he was awarded the sum of $80 per week. Plaintiff's employment was terminated October 30, 1974 based on the opinion of the company doctor that defendant could never again perform manual labor. Plaintiff did not receive any money from the defendant under the voluntary supplemental payment plan. He brought this action for the difference between the amount awarded as workers' compensation ($80) and his total salary — $167.20, times the number of weeks his alleged disability continued. Plaintiff moved for and was granted summary judgment. Defendant brings this appeal. *Held:*

1. Defendant's first enumeration of error alleges the court erred in granting summary judgment in favor of the plaintiff-employee. Excellent briefs by both parties have assisted this court greatly in arriving at a resolution of this unique and complex issue. No Georgia case in point has been cited by either party and our research has failed to disclose any.

The critical issue presented for resolution is the status and legal effect of informational booklets distributed to employees by employers, when they contain incomplete or incompatible information with that in a master policy or plan of the employer. Both parties center their argument on contract theory.

All parties appear to agree that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan. Taylor v. General Telephone Co. of Cal., 20 Cal. App. 3d 70 (97 Cal Rptr 349); Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405 (171 NE2d 518). Although not specifically articulated per se, the bases for such contracts appear to lie in quasi contract (Gallo v.

Howard Stores Corp., 145 FSupp. 909 (DC Pa., 1956)), and estoppel in pais (Gladden v. Pargas, Inc. &c., 557 F2d 1091 (4th Cir 1978)) — as these remedies find their genesis in equity and justice. See generally Code Ann. § 38-114 (Code § 38-114); 17 CJS 566, Contracts, § 6; 66 AmJur2d 942, Restitution and Implied Contracts, § 2; Annot. 42 ALR2d 470; see also *Peacock v. Horne,* 159 Ga. 707, 724 (126 SE 813); *Rieves v. Smith,* 184 Ga. 657, 664 (196 SE 421).

Corbin states that "[s]ometimes a promise is said to be 'implied in law,' . . . When a promise is said to be 'implied in law,' it is meant that neither the words nor the other conduct of the party involved are promissory in form or justify any inference of a promise. The term is used to indicate that the party in question is under a legally enforceable duty, just as he would have been if he had in fact made a promise . . . The legal duties that were enforced by the use of this fictitious promise have in recent years come to be described as quasi contractual." 1 Corbin on Contracts 38-39, § 17. Williston agrees: "Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties . . . There are, however, unquestionably obligations imposed by law without reference to mutual assent and enforceable only in special assumpsit as if they were actual contracts." 1 Williston on Contracts 12, 13-14, § 3A; accord, 1 Corbin on Contracts 44-46, § 19.

There are two lines of cases of our sister states that deal with the analogous issue of pensions. We consider them apropos as both the pension plan and the supplemental income plan of the case sub judice are forms of compensation from an employer to an employee. One line of cases is typified by Gould v. Continental Coffee Co., 304 FSupp. 1 (DC NY, 1969), and Davilla v. Court Employment Project, Inc., 383 NYS2d 140 (1976). In Gould the court held that a corporation "is bound by the terms" of a "summary of profit-sharing trust plan . . ." Id. (3). They reasoned that a summary of the master plan should not be misleading and any discrepancy which exists between the master plan and its summary must be construed against its draftsman and in favor of the

employee. Id. (4). Although the corporation offered to let employees inspect the master plan their failure to designate a "time and place on its premises" relieved an employee from such provisions. Id. (6).

Davilla held that the employee who was given a "manual" regarding a pension fund had the "right to rely on an official publication given to him as a part of his employment, even if the employer erred in the preparation of the language." Id. (2). They used the same reasoning as Gould — a written document is to be construed against the party who prepared it. See also Gillette v. Heinrich Motors, Inc., 390 NYS2d 330.

In the instant case, the summarized version of the supplemental benefit to workers' compensation did not specify a duration limit of compensation. The master plan had a 13 week limit, with the right of review thereafter to determine whether additional payments would be made. Purely for comparison purposes — suppose a corporation's summarized version in a pamphlet offered a pension plan for employees who had served 30 years with the company, but the master plan limited the payment of a pension to a period of 1 year, with the right of the corporation to determine whether any amount would be paid after the first year. This analogy is drawn to demonstrate that a rule of law which permits master plans to control over inadequate or misleading summarized versions can result in injustice to employees.

The opposite side of the coin is demonstrated by Fields v. Western Equipment Co. of Eugene, 469 P2d 779 (Ore. 1970), in which the company announced a profit-sharing plan in which the announcement stated: "The purpose of this announcement is to highlight the various benefits and provisions of the plan of interest to you. A complete copy of the profit sharing plan and trust agreement will be maintained in the company's office for your inspection." The court held that the announcement that a complete copy of the plan was available for inspection, and the announcement merely contained the highlights, gave employees ample notice that the announcement was not designed as the company's offer but was simply intended as information and an invitation to employees to look at the plan itself if they were

interested in the profit sharing program. Id. 782.

In Voigt v. South Side Laundry &c., 24 Wis. 2d 114 (128 NW2d 411), the company described a non-contributing pension plan for their employees in an "outline." The court held that the "outline" sufficiently notified the employees that the master policy controlled — and not the information contained in the outline.

There is another approach taken by Gallo v. Howard Stores Corp., 145 FSupp. 909, supra, in which an employee signed a card to participate in a pension plan. The employer distributed a "booklet" to the employees with a covering letter which indicated that the booklet "describes in question and answer form your Pension Plan." The booklet stated that early retirement could take place after a participant reached 55 years of age, provided he had at least 15 years of service. The booklet failed to mention that the participant must "retire with consent of the employer." The court held that a party could be bound by his words or conduct, without any intention to assume legal obligations, where such conduct and words would be understood by a reasonable man of ordinary intelligence that such words and conduct reflected his intention. Id. 912. Obviously this theory is based in quasi contract. The court also held that the booklet in omitting reference to the necessity of receiving company consent, amounts to a misrepresentation (although innocent) upon which the plaintiff could reasonably rely under the theory of estoppel. Id. 912. We find the reasoning of Gallo v. Howard Stores Corp., 145 FSupp. 909, supra, to represent the better approach. Accordingly, the crucial question to be determined in the instant case is whether the information contained in the booklet adequately placed the employee on notice that the intent of Hercules was not that the booklet distributed contained the "Voluntary Compensation Plan" but placed the employee on notice that the booklet contained a summarization — which was not binding, and the employees could inspect the controlling master plan in the personnel office.

We find *the issue of adequacy of the notice* to the employee, that the voluntary compensation plan in the booklet was not controlling, but the master plan in the personnel office was controlling, to be within the province

of the jury. Thus, the grant of summary judgment was improper, even though the plaintiff was entitled to 13 weeks of compensation — the remainder of the period was for determination of the jury. See Spitznass v. First Nat. Bank of Oregon, 269 Ore. 676 (525 P2d 1318 (2)); see generally Annot., Private Pension Plans: Statements in Literature Distributed to Employees as Controlling Over Provisions of General Plan, 50 ALR3d 1270.

2. The last enumeration of error alleges the court erred in failing to find the union's collective bargaining agreement was the controlling document to resolve the issue in this case. The record fails to reflect whether the plaintiff was or was not a member of the union. Thus, we are without adequate facts to determine the issue. We would have to base our holding on facts not in the record. This we will not do. As this action is being returned for a new trial, the defendant or plaintiff may perfect their evidence as to this issue.

3. The remaining enumerations of error are mooted by the holding in Division 1, supra, and need not be discussed.

*Judgment reversed. Shulman, Banke, Birdsong, Underwood and Carley, JJ., concur. Deen, C. J., McMurray, P. J., and Smith, J., dissent.*

ARGUED JANUARY 16, 1979 — DECIDED MAY 3, 1979 — REHEARING DENIED JUNE 7, 1979 —

*Bennet, Gilbert, Gilbert, Whittle, Harrell & Gayner, Richard M. Scarlett, Wallace Harrell,* for appellant.
*George M. Rountree,* for appellee.

SMITH, Judge, dissenting.

Initially I would like to point out that the majority's application of the law of quasi contract is inappropriate. "A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word 'contract' at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal

relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation." 1 Corbin on Contracts 44, 46, § 19. In the case at bar, the conduct of the parties clearly demands the conclusion that they intended to form a contract, and thus the law of quasi contract does not come into play. In fact, a quotation from the majority opinion itself demonstrates that the instant relationship is the antithesis of quasi contract: "All parties appear to agree that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them . . ." Corbin offers the following illustrations as proper applications of quasi contract law: "Mistakenly believing that he owns Blackacre, A pays the taxes and makes permanent improvements thereon, without the knowledge or assent of the real owner B. When B is requested to reimburse A, he positively refuses. Nevertheless, the law will in some such cases make it B's duty to reimburse A. B's obligation is called quasi contract.

"B finds or steals A's money and refuses restitution; he is under a quasi contractual duty to make such restitution.

"Under compulsion of law, or in order to protect his own interest in property, A makes payment of money that it was B's legal duty to pay. In spite of any express refusal, B is under a quasi contractual duty to reimburse A.

"A finds B's house afire and his cattle starving and renders service and incurs expense in saving and feeding them. In some states, B is under a quasi contractual duty of reimbursement." Id., pp. 47-48. However, my disagreement with the majority's use of quasi contract principles does not form the basis of my dissent, as both the majority and I believe that the appellant employer was obligated to pay appellee under its "Voluntary Compensation Plan." Rather, the crux of this dissent is my belief that there remains no issue of fact concerning the adequacy of notice to appellee and, under the rules governing contractual construction, appellant is indebted to appellee as a matter of law under the terms of the

voluntary compensation plan as set out in the booklet it distributed to its employees.

The section of appellant's booklet entitled "Voluntary Compensation Plan" is explicit and without qualification: "Hercules pays to an employe absent from work because of an injury sustained in the course of employment, the difference between his normal wages and the amount of compensation provided by the Georgia Workmen's Compensation Law. This plan becomes effective as soon as a person accepts employment with the company. The entire cost of this plan is paid by the company.

"Payments under this Plan will begin immediately to employes who have suffered a tabulable industrial injury. Payments to employes who have suffered a non-tabulable industrial injury will begin after a two day waiting period.

"Employees receiving payments under this Plan must cooperate fully with the Company in following the advice and directions of the Company Physician." As the majority indicates, the voluntary compensation program is only one of several benefit programs set out in "Part III" of the booklet. The introduction to part three, four pages removed from appellant's above description of its voluntary compensation plan, states in part: "These . . . Benefit Plans are presented here in a very brief form . . . You may obtain the full details of all Benefit Plans from your Foreman, Supervisor or the Personnel Department." In my view that introduction does not suffice to notify employees that the voluntary compensation plan actually provided by appellant is completely different from what appellant's booklet represents it to be.

It is significant that descriptions of other benefit plans in part three are themselves specifically qualified. For instance, appellant's description of its "Group Hospital-Surgical Plan" contains the language: "Complete details of the Plan are available in the Personnel Office." The summary of the "Group Life Insurance Plan" says: "Booklets describing the complete Plan are available from the Personnel Office." Appellant's characterization of its "Pension Plan" includes the language: "A booklet describing the entire

Pension Plan is available upon request in the Personnel Office." Finally, appellant's description of its "Savings Plan," found on the page just preceding the voluntary compensation plan, says: "When you approach eligibility [for the plan], the Office Manager will explain this Plan to you in detail." No such language accompanies appellant's description of its voluntary compensation plan.

"If the construction [of a contract] is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." Code § 20-704 (5). The description of the voluntary compensation plan contained in appellant's brochure is clear and unambiguous, and, even if the introduction to part three along with the foreword to the entire booklet (thirty-eight pages removed from the voluntary compensation plan) can be said to create any doubt as to the actual nature of the plan, that doubt cannot work in appellant's favor. "[D]efendant [employer] is bound by the terms of the Plan as embodied in the booklet it provided plaintiff [employee]. Although defendant is permitted to furnish its employees with a summary of its Plan, . . . such summary should not be misleading. Any discrepancy which exists between the Plan and its summary must be construed against its draftsman and in favor of plaintiff employee." Gould v. Continental Coffee Co., 304 FSupp. 1, 3 (S.D. NY 1969).

It is undisputed that appellee had no actual notice of the existence of a master plan contradicting appellant's brochure summary of its voluntary compensation program, and the vague, far removed, introductory statements as a matter of law did not suffice to place appellee on notice of such a plan. Appellant should not be permitted to make an unequivocal promise inducing a person into its employ and then to renege when it comes time to comply. I would affirm the judgment of the trial court.

I am authorized to state that Chief Judge Deen and Presiding Judge McMurray join in this dissent.