## 58564. RIDER v. WESTINGHOUSE ELECTRIC CORPORATION et al.

CARLEY, Judge.

Appellant brought suit, as beneficiary of her deceased husband, to recover under a group occupational travel accident insurance policy provided by the appellee-Westinghouse to its employees and underwritten by the appellee-Insurance Company of North America (INA). Summary judgment was granted to Westinghouse and INA and in our original opinion in this case, appearing at 152 Ga. App. 805 (264 SE2d 276) (1979), we affirmed the grant of summary judgment to INA and reversed the grant of summary judgment to Westinghouse. In reversing the grant of summary judgment to Westinghouse, we relied upon this court's decision in *Hercules, Inc. v. Adams,* 150 Ga. App. 223 (257 SE2d 289) (1979), wherein it was held that a company handbook delivered to a new employee, which furnished incomplete information concerning the company's voluntary compensation plan contained in the master employment agreement, would bind the company if it did not contain adequate notice that the employee should consult the master agreement. It was then held that the issue of adequacy of the notice in the Hercules, Inc. handbook of the existence of a master agreement remained in the case as an issue of fact for the jury, precluding the grant of summary judgment. Subsequent to our original decision in the instant case, this court's decision in *Hercules, Inc.* was reversed by the Supreme Court which held that whether the handbook fairly put employees on notice of the existence of and the need to examine the master agreement was a matter of law to be determined by the court and not a question of fact for the jury. The Supreme Court determined that such notice in the Hercules, Inc. handbook was adequate as a matter of law. *Adams v. Hercules, Inc.,* 245 Ga. 464 (265 SE2d 781) (1980).

On certiorari our original opinion in this case has been vacated and remanded for reconsideration in light of the Supreme Court's decision in *Adams v. Hercules, Inc.,* supra. Since we relied on this court's decision in *Hercules, Inc.* in our original opinion in the instant case, we must now reexamine the grant of summary judgment to Westinghouse and to INA to determine whether the Supreme Court's subsequent reversal of *Hercules, Inc.* requires a different disposition of this case. The facts are fully set forth in 152 Ga. App. 805 and will not be repeated here except as necessary to this reexamination.

1. With regard to the grant of summary judgment to INA, the insurer, we affirm. While the Supreme Court's order vacating and remanding this case does not specifically limit itself to that portion of our original decision dealing with the grant of summary judgment to

the employer, Westinghouse, study of the Supreme Court's decision in *Adams v. Hercules, Inc.* convinces us that it has potential application to only that limited portion of our original decision—Division 2—and has no application whatsoever to the propriety of the grant of summary judgment to INA. Accordingly, we readopt Division 1 of our original decision at 152 Ga. App. 805 and hold that, for the reasons therein discussed, the grant of summary judgment to INA was proper.

2. We, therefore, turn to the issue of the grant of summary judgment to Westinghouse and the applicability of the Supreme Court's decision in *Adams v. Hercules, Inc.* to that question. As we interpret that decision, resolution of the instant issue involves a determination of whether, as a matter of law, the material furnished to appellant's deceased by his employer, Westinghouse, fairly put him on notice of the existence of the master policy of group insurance containing the exclusionary provision and that the master policy should be examined to determine the extent of coverage afforded to him thereunder. *Adams v. Hercules, Inc.,* 245 Ga. at 465. To this end, we must examine the materials provided to appellant's husband by Westinghouse and determine whether the language employed therein "would put the ordinarily prudent person on notice that the complete details were absent from this presentation, and that at least one other source should be consulted for 'full details.' " *Adams v. Hercules, Inc.,* supra.

For the years 1974 and 1975 appellant's husband received a computer printout statement from Westinghouse which purported to inform him and his family of the benefits which had accrued to him by virtue of his employment—the "full extent of what [he had] in the benefits 'bank' and what [he could] count on if the need arises." He was informed by the statements that he and his family had in his Westinghouse "bank" and could "count on" various benefits, including payment to his beneficiary of $25,000 in travel accident insurance in the event that his death should result from an accident while traveling on company business. This was the sum total of Westinghouse's specific representation to appellant's husband as to his eligibility for this benefit—that the $25,000 "would ALSO be paid" if he died as the result of an accident while traveling on company related business travel. There was no specific notice that the representation that such benefits "would ALSO be paid" was merely a "brief" statement of eligibility, the specifics of which were based upon Westinghouse's group policy with INA or that appellant's husband had a right to inspect that policy.

The statements, however, also contained the following general provision, located in a part of the text separate from the

representations concerning the "benefit" here in issue: "In all cases, your eligibility for benefits and the determination of actual benefits payments are governed and controlled by the provisions of the various benefit plans." Westinghouse urges that this general statement, coupled with the specific representation that the $25,000 was an "insurance" benefit, brings the statements within the ruling in *Adams v. Hercules, Inc.* We do not agree. Unlike *Adams v. Hercules, Inc.,* the portion of Westinghouse's statements quoted above does not give notice of the source of the travel accident insurance—the INA group policy—or that the employee was entitled to inspect that source through a designated procedure. Thus the statements, construed in their totality and most strongly against Westinghouse, contain a specific unqualified representation that $25,000 in insurance "would be paid" in the event of appellant's husband dying as the result of a company-related accident as well as a general representation only that "eligibility" for benefits would be governed and controlled by the provisions of an unspecified and undisclosed plan. We are not prepared to hold that these statements, as a matter of law, gave appellant's husband notice that the basis for "eligibility" for the travel accident benefits should be made by reference to the terms of the INA group policy—undisclosed as to existence and accessibility—rather than by reference to the unambiguous terms of the representation as to the benefit contained in the statement itself that it would be paid if his death occurred in the specified manner—as the result of a company-related accident. In short, unlike *Adams v. Hercules, Inc.,* we find nothing in the instant statements which would put the ordinarily prudent person on notice of the existence of or accessibility to a "benefit plan" which would be controlling on the question of eligibility other than the "Your Benefits as an Employee of Westinghouse" statement of benefits furnished to appellant's husband. Under these circumstances, it is our opinion that in avoidance of potential liability Westinghouse cannot claim the benefit of the exclusionary language of the group policy the existence and location of which it gave no real notice to its employee. The statements may have given notice that the travel accident benefits were underwritten by "insurance" but unlike *Adams v. Hercules, Inc.,* we find nothing which would put appellant's deceased on notice of the existence of the specific group policy, the exclusionary language of which is relied upon by Westinghouse, or of the right to inspect it and which would be controlling over the computer printout on the question of "eligibility."

Westinghouse also relies upon the following provision of the statement, again located on pages appearing subsequent to the

unqualified representation as to benefits: "We've made every effort to insure that the figures on your statement are accurate. However, you can appreciate that in preparing some 145,000 individual reports, occasional errors may occur. *If you believe any of your figures are inaccurate,* circle the items in question and return the form to your supervisor. You will get a corrected statement or an explanation of why the figures shown are correct." (Emphasis supplied.) Westinghouse contends that if appellant's husband had followed this directive, the computer error would have been discovered and he would then have been made aware of the exclusionary provisions of the master policy. We find this argument to be without merit. Since the statement did not inform him that the travel accident insurance benefits were based upon a policy of group insurance or that he could inspect that policy, there is no reason why appellant's husband should have suspected the unqualified representation that $25,000 in benefits would be paid in the event of the stated contingency may have been Westinghouse's computer printout error. He was encouraged to question the accuracy of the statement's representations only if he had reason to suspect an error; he was not informed of or directed to examine the underlying basis of this "benefit" for more details. Compare *Hercules, Inc.,* 245 Ga. at 465. We, therefore, conclude that the computer printout statements standing alone do not as a matter of law put an employee on notice that the complete details of his eligibility for travel accident insurance benefits were to be found elsewhere or where and how that other source should be consulted for "full details."

The record before us contains an additional booklet prepared by Westinghouse for delivery to its employees which does specify the source of the "Travel Accident Insurance" benefits as the INA group policy and informs as to the limited coverage thereunder and the right to obtain "a certificate explaining the details." Were it undisputed that this booklet had been issued to appellant's husband, the case, in our opinion, would be taken out of the above discussed reasoning and would be then controlled, adversely to appellant's claim, by the Supreme Court's holding in *Adams v. Hercules, Inc.,* supra. However, the trial court found that a question of fact remains as to whether appellant's husband was issued this explanatory booklet or, as contended by appellant, he received only the statements entitled "Your Benefits as an Employee of Westinghouse" upon which appellant's claim is based. We agree that such a fact question remains as to whether appellant's deceased received only the computer printout statements or, in fact, also received the more explicative handbook. The grant of summary judgment on the basis of *Adams v. Hercules, Inc.,* is, therefore,

precluded. If the jury determines that appellant's husband received only the computer printout statements, appellant would be entitled to recover against Westinghouse. If the jury determines that appellant's husband received the additional explanatory handbook, as contended by Westinghouse, a verdict for the employer would be authorized. *Adams v. Hercules, Inc.,* supra. These factual questions remaining, the grant of summary judgment to Westinghouse was erroneous.

*Judgment affirmed in part and reversed in part. Deen, C. J., and Shulman, J., concur.*

DECIDED JUNE 25, 1980 —

*Ben F. Smith, Thomas J. Browning,* for appellant.
*Frederick E. Link, Williston C. White, J. Kirk Quillian,* for appellees.