A98A1632. AMOCO FABRICS & FIBERS COMPANY v. RAY et al.
(510 SE2d 591)

ANDREWS, Chief Judge.

On November 3, 1998, we dismissed the appeal of Amoco Fabrics & Fibers Company (Amoco) for failure to file a separate enumeration of errors as required by OCGA § 5-6-40 and Court of Appeals Rule 22 (a).[1] Amoco filed a separate enumeration of errors on November 12 and has filed its motion for reconsideration of this dismissal. Although we do not condone this failure and expect compliance with the Rules of this Court, pursuant to that motion and in light of *Reeder v. Gen. Motors Acceptance Corp.*, 235 Ga. App. 617 (510 SE2d 337) (1998) (whole court) and *Leslie v. Williams*, 235 Ga. App. 657 (510 SE2d 130) (1998) (whole court), we hereby vacate our opinion of November 3, 1998, and issue the following opinion.

This class action was filed by former employees of Amoco alleging breach of contract or, alternatively, recovery in quantum meruit. This litigation was a result of Amoco's refusal to pay vacation benefits to its former employees for the period in 1992 until Amoco sold the manufacturing plant where they worked, even though they were

---

[1] See, e.g., *Crozier v. Crozier*, 228 Ga. 372 (185 SE2d 411) (1971); *Windsor v. Southeastern Adjusters*, 221 Ga. 329 (144 SE2d 739) (1965).

not Amoco employees on record as of December 31, 1992, which Amoco contends is the eligibility rule for vacation pay. Amoco contends the trial court's conclusion that the eligibility rule was not part of the parties' enforceable vacation pay contract, the resulting summary judgment for the employees, and denial of its motion for summary judgment were error.

The parties stipulated the facts at issue. Amoco sold its Bainbridge filament yarn plant to Shaw Industries effective midnight September 25, 1992 pursuant to an Agreement for Sale and Purchase of Assets. Plaintiffs are among 170 hourly paid at will employees on Amoco's last complete payroll of September 25.

By midnight that night, Amoco had terminated all active hourly employees at that plant. Almost all were then hired by Shaw effective the day after the closing of the sale and Shaw recognized their service with Amoco for benefit purposes, including vacations, but did not pay vacation pay for any period prior to September 25, 1992. Plaintiffs were not employed by Amoco on December 31, 1992.

All Amoco hourly employees were issued an Employee's Handbook, the second page of which is headed "About This Handbook" and states "[t]his handbook was prepared to help familiarize you with some important policies and practices. To make it more readable and useful *the actual policies, which are far more lengthy and detailed, were summarized. The actual policies are controlled and maintained in the Employee Relations Department. If you should ever have a question concerning any rule or policy, you are encouraged to seek the assistance of your Supervisor or the Employee Relations Department."* (Emphasis supplied.) The Vacation Policy section of the handbook provided for paid vacation to employees, with the length determined by years of employment. In addition to the time off, employees were also entitled to "receive pay equal to [a percentage based on length of service] of the previous year's earnings for every week [of vacation]." The handbook did not contain much of the information stated in the Amoco Policy Manual vacation policy, including eligibility requirements. Plaintiffs would be owed $117,668.57 if Amoco is liable for this vacation pay for the period prior to the sale.

In 1990, Amoco issued its "Amoco Policy Manual" to all supervisors. The manual contained Policy No. 5.01 "Vacation," which included in its Eligibility and Benefits section the following statement: "[a]n individual must be an employee on record as of December 31 in order to be eligible for a vacation the following calendar year."

Amoco estimated its potential accrued vacation expense for its hourly employees each month during the year and debited its vacation expense account and credited an accrued vacation liability account on its general ledgers. Amoco employees were eligible to withdraw their vacation pay earned in a given year as early as Feb-

ruary of the following year, regardless of whether or when they actually took vacation time off.

On these facts, the trial judge granted summary judgment to the employees, finding that the handbook was not sufficiently "clear and unambiguous" so as to put the "ordinarily prudent person" on notice that the complete details of the vacation pay policy were absent from the handbook and that another source should be consulted for full details.

The issue in such a situation is whether as a matter of law this handbook fairly put employees on notice of the existence of additional materials, including the Amoco Policy Manual, which needed to be consulted in order to determine exact benefits. *Adams v. Hercules, Inc.*, 245 Ga. 464, 465 (265 SE2d 781) (1980).

First, we note that the trial court imposed a "clear and unambiguous" standard, without citing any authority for it. As reflected in *Adams*, supra, the standard is whether the handbook "fairly" notified the employees of other sources to consult. Use of the stricter standard was error.

In *Adams*, the Supreme Court affirmed this Court's finding in *Hercules v. Adams*, 150 Ga. App. 223, 224 (257 SE2d 289) (1979) that "an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan. [Cits.]" See also *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981).

Therefore, the provision of vacation benefits to the employees is part of their employment contract, leaving the issue of whether Amoco's handbook gave notice to the employees to check other sources for specifics of the vacation benefits.

Amoco contends that the present situation is factually similar to and controlled by *Adams*, supra, while the employees argue it is more like *Rider v. Westinghouse Elec. Corp.*, 155 Ga. App. 61 (270 SE2d 288) (1980) (*Rider II*).

In *Adams*, an employee handbook was provided which stated, in its Foreword, that "it is desirable that each employee know the benefits to which he is entitled. This booklet has been prepared to present this information to you in a form that will be readily available for reference. However, feel free to ask your Foreman or Supervisor for information about you and your job at any time." The section on Employee Benefit Plans stated that, "[i]n addition to earned wages, Hercules has a liberal array of benefits. . . . These less common Benefit Plans are presented here *in a very brief form*. Because of the nature of some of these Plans, revisions must occasionally be made. *You may obtain the full details of all Benefit Plans from your Fore-*

*man, Supervisor or the Personnel Department.*" (Punctuation omitted; emphasis supplied.) *Hercules v. Adams, supra.*

The handbook stated that Hercules would pay an employee absent from work due to an injury suffered in the course of employment the difference between his normal wages and the workers' compensation he received. Although not mentioned in the handbook, the master agreement contained a 13-week time limitation on the payment of the difference.

The Supreme Court found as a matter of law that the emphasized portion of the handbook "even if standing alone, would put the ordinarily prudent person on notice that the complete details were absent from this presentation, and that at least one other source should be consulted for 'full details.' " *Adams v. Hercules, supra.*

Similarly, we find as a matter of law that the language in the Amoco employee handbook, highlighted above, informed the employees that the handbook was not the "actual policies" and these could be consulted by the employee.

*Rider, supra,* involved provision of travel accident insurance by an employer to an employee and a very different factual situation. Each year, each employee received a personalized computer generated statement of their accrued benefits, headed by their name, social security number, birth date, and other personalized information. For the years in issue, Rider's statements contained the following: " 'For ACCIDENTAL death, the following would also be paid: If death results from an accident ON THE JOB — $20,000 Personal Accident Insurance Plan PLUS any Workmen's Compensation which applies. If death should result from an accident while you are traveling on Company business, $25,000 Travel Accident Insurance would ALSO be paid.' " Also, the statement said it was " 'also important that you take this statement home and review it with members of your family. . . . [I]t will help them to know the full extent of what you have in the benefits "bank" and what you can count on if the need arises.' " *Rider v. Westinghouse Elec. Corp.,* 152 Ga. App. 805 (264 SE2d 276) (1979) (*Rider I*).

Rider died in a job accident and his widow was denied the Travel Accident Insurance because the group insurance policy excluded employees, such as her husband, whose principal job assignment was driving company vehicles unless they were traveling outside their territory, which he was not. Nowhere in the information provided to Rider was he advised that the Travel Accident Insurance was predicated upon a group policy of insurance which was subject to his inspection to determine the full details of coverage and exclusions.

*Rider I* was issued after *Hercules* and before *Adams.* There, this Court reversed summary judgment to Westinghouse based on *Hercules.* After *Adams,* this Court again concluded in *Rider II* that the lan-

guage used by Westinghouse was not sufficient to put Rider on notice of the need to inspect the group policy, but that there was a factual issue remaining as to whether Rider had received additional materials from the company which did provide information of the group policy and its limited coverage as well as the right to obtain a certificate explaining the details.

Here, there is no remaining factual issue and we find that Amoco was entitled to summary judgment.

*Judgment reversed. Johnson, P. J., and Smith, J., concur.*

DECIDED DECEMBER 18, 1998 

*Lambert, Floyd & Conger, T. Harold Lambert*, for appellant.
*Kirbo & Kendrick, Ben Kirbo*, for appellees.